**UNITED STATES of America**

v.

**ONE PARCEL OF PROPERTY LOCATED AT 101 KIMBERLY AVENUE, NEW HAVEN, CONNECTICUT, with All Appurtenances and Attachments Thereon**

[Claimants: Lydia Rivera, Connecticut Housing Finance Authority].

**Civ. No. N–89–192 (JAC).**

United States District Court, D. Connecticut.

May 10, 1991.

Carl J. Schuman, U.S. Atty.'s Office, Hartford, Conn., for plaintiff.

Timothy P. Pothin, New Haven, Conn., for claimant Lydia Rivera.

RULING ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

On April 24, 1989, the United States filed a verified complaint of forfeiture alleging that the defendant property was used or intended to be used to facilitate the distribution of illegal drugs in violation of 21 U.S.C. § 881(a)(7).[1] Lydia Rivera and the Connecticut Housing Finance Authority ("CHFA") filed claims. On March 21, 1990, pursuant to a Stipulation for Compromise Settlement (filed Mar. 20, 1990) ("Stipulation"), this court entered a Decree of Forfeiture ("Decree"). The Decree and Stipu-

lation called for the United States to recognize and pay the claim of CHFA and then to pay claimant Rivera fifty percent of the remaining proceeds of the sale. The Stipulation also provided that claimant Rivera could remain in the defendant property until ten days before any closing on the property, subject to the discretion of the United States Marshal.

On March 20, 1991, the government moved for relief from judgment on the grounds that it had obtained newly discovered evidence and that the property had not yet been sold. On March 25, 1991, the Court granted the motion, vacated the Decree, and relieved the government from the terms of the Stipulation. Although the government adheres to its original intention to recognize and pay the claim of CHFA, *see* Memorandum of Law in Support of Motion for Summary Judgment ("Government's Memorandum") at 2, the government now moves for summary judgment against claimant Rivera. For the reasons stated below, the government's Motion for Summary Judgment (filed Apr. 8, 1991) is granted.

## FACTS

The relevant facts are apparently undisputed—indeed, claimant Rivera did not submit a statement of material facts in dispute as required by Rule 9(c)2 of the Local Rules of Civil Procedure (D.Conn.)[2] and suggests no dispute as to the pertinent facts in her Objection to Motion for Summary Judgment (filed Apr. 22, 1991) ("Claimant's Objection"). Accordingly, pursuant to Rule 9(a)1 of the Local Rules

of Civil Procedure (D.Conn.),[3] the facts set forth in the government's Statement of Material Facts (filed Apr. 8, 1991) ("Undisputed Facts") are deemed admitted.

In August 1988, officers of the New Haven Police Department and the Statewide Narcotics Task Force began to receive information that Julio Rivera, the son of claimant Rivera, was using the defendant property to conduct a kilogram-quantity cocaine and heroin trafficking "operation" in the New Haven area. Undisputed Facts at 1. Information from police surveillance and confidential informants revealed, among other things, that Julio Rivera would leave from and return to the defendant property when traveling to New York City to purchase large quantities of narcotics. *Id.* Additionally, according to information obtained through a pen register and court-ordered wiretap, Julio Rivera and members of his organization would use the telephone at the defendant property to make drug-related phone calls. *Id.* at 2.

Informants told police that Julio Rivera would send the cash proceeds of his narcotics operation to Puerto Rico. *Id.* According to one informant, Julio Rivera had his mother (claimant Rivera)—who is the record owner of the defendant property— along with other family members, transport the money. *Id.* In an April 19, 1989, wiretapped telephone conversation between claimant Rivera and Julio Rivera, Julio told his mother: "Everything is alright [sic], I've been picking up this week[.] I've been picking up." *Id.* And in a subsequent conversation, he told her that he was being watched and needed to take a vacation. *Id.*

---

**1.** The statute provides in pertinent part that the following shall be subject to forfeiture to the United States:

>All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, *except* that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(7) (emphasis added).

**2.** Rule 9(c)2 provides as follows: "The papers opposing a motion for summary judgment shall

include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

**3.** Rule 9(c)1 provides as follows:

>Upon motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. All material[ ] facts set forth in said statement will be deemed to be admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)2.

As of November 1988, Julio Rivera had purchased a 1986 Firebird, a 1986 Corvette, and a 1988 Lincoln Continental, even though, according to Connecticut Department of Labor records, he had not been gainfully or regularly employed during the previous five years. *Id.*

On April 24, 1989, police obtained a state search warrant for the defendant property and seized from it three bags of marijuana, one bag of cocaine, a scale of the type commonly used to weigh narcotics, a rubber stamp of the type commonly used to stamp narcotics packages, cut straws, a vial, razor blades, four handguns, one shotgun, and assorted ammunition. *Id.* at 2–3.

Julio Rivera was subsequently charged by the United States with conspiring to distribute cocaine from August 1988 to May 1989. *Id.* at 3. On December 8, 1989, Rivera pleaded guilty in federal court to the charge, and on September 13, 1990, he received a sentence of imprisonment for a term of one hundred fifty-one months. *Id.* Julio Rivera had been previously convicted of third-degree forgery in 1987 and of carrying a dangerous weapon and possession of narcotics in November 1988. *Id.*

In February 1991, New Haven police received information from an informant about continued heroin distribution at the defendant property. *Id.* Police surveillance in February confirmed the presence of a level of pedestrian traffic at the defendant property consistent with drug trafficking. *Id.* In March 1991, a confidential informant purchased a packet of heroin from claimant Rivera at the defendant property and informed the police that claimant Rivera was living on the second floor of the house and was assisting the operation headed by her daughter Nancy Rivera. *Id.* Also in March 1991, a confidential informant performed a "controlled buy" of heroin from the defendant property and police observed at least six other transactions occur there. *Id.* at 3–4.

On the basis of that information, police obtained a state search warrant on March 8, 1991 for the defendant property. *Id.* at 4. The police seized, among other things, seventy white glassine packets of heroin. *Id.* Police observed claimant Rivera, who was present at the time of the search, fleeing from the first floor via the stairwell to the second floor, calling out and apparently warning others that "the police are coming." *Id.* Police also observed another person attempting to flush bundles of heroin down the toilet on the second floor. *Id.* Claimant Rivera was arrested for possession of narcotics, possession with intent to sell, conspiracy to possess, and, subsequently, criminal impersonation. *Id.*

## DISCUSSION

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). "[T]he mere existence of *some* allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse*

*Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

■ In a forfeiture action such as this one, brought pursuant to 21 U.S.C. § 881(a)(7), the government must prove that the property in question was "used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of this title punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7). The government's initial burden is to demonstrate probable cause. *See* 19 U.S.C. § 1615;[4] *see also* 21 U.S.C. § 881(d) (incorporating title 19 procedures in title 21 actions). This burden applies both to trial and to summary judgment proceedings, because a summary judgment motion implicates the same evidentiary burden of proof that would apply at trial. *See Liberty Lobby, Inc.*, 477 U.S. at 252, 254, 106 S.Ct. at 2512, 2513; *United States v. Premises and Real Property at 4492 S. Livonia Rd.*, 889 F.2d 1258, 1267 (2d Cir. 1989) (*"South Livonia Road"*). The government may meet its initial burden on the basis of hearsay evidence. *Id.* at 1267–68. Once the government has made its probable cause showing, the burden shifts to the claimant to prove by a preponderance of the evidence either that the property was not used unlawfully or that the illegal use was without the claimant's knowledge or consent. *Id.* This burden, as well, applies both at trial and to summary judgment proceedings. *See Liberty Lobby*, 477 U.S. at 252, 254, 106 S.Ct. at 2512, 2513; *South Livonia Road*, 889 F.2d at 1267.

■ In this case, there is no dispute that the defendant property was used to distribute drugs and, thus, that the government has made a sufficient showing of probable cause. However, claimant Rivera contends that summary judgment cannot be granted because she claims to be within the statuto-

rily created exemption for innocent ownership.[5] Claimant's Objection at 2–3. Claimant states in her affidavit that "[a]ny acts or omissions at 101 Kimberly Avenue that facilitated a violation of Title 21 of the United States Code were committed without [her] knowledge" or "consent." Affidavit of Lydia Rivera (*attached to* Claimant's Objection) at 2. According to claimant, therefore, "there is an issue as to her knowledge or consent and more specifically as to her state of mind." Claimant's Objection at 2–3. However, the claimant's affidavit does not specifically address, much less dispute, *see* Rule 56(e) of Fed.R.Civ.P., any of the government's evidence that the claimant was aware of Julio Rivera's criminal record and extravagant lifestyle; that the claimant and Julio had telephone conversations that referred to the drug trade; that the claimant assisted in laundering drug money to Puerto Rico; that the claimant sold heroin from the defendant property to an informant; that the claimant was living in the defendant property at the time of other observed transactions and "controlled buys" and at the time of the seizure of seventy packets of heroin from the property on March 8, 1991; and that the claimant attempted to shield herself and others from police detection on March 8, 1991.

The claimant's position appears to be that the mere assertion of an innocent owner defense and the submission in an affidavit of general denials of the government's evidence suffice to create a factual dispute. That is not the law. As a general matter, Rule 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of the adverse party's response." Our Court of Appeals, in *United States v. Property Located at 15 Black Ledge Drive*, 897 F.2d 97 (2d Cir.1990) (*"Black Ledge"*), has held that a claimant's affidavit containing only conclusory denials of knowledge of drug activity does not create a factual issue of innocent ownership suffi-

---

4. The statute provides in pertinent part as follows:

    In all suits or actions ... brought for the forfeiture of any vessel ..., where the property is claimed by any person, the burden of proof shall lie upon such claimant ...: *Pro-*

*vided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

19 U.S.C. § 1615 (emphasis in original).

5. *See supra* note 1.

cient to deny the government's summary judgment motion, especially when, as in the instant case, the government presents strong evidence of knowledge. *Id.* at 101–03. The claimant in *Black Ledge,* who was the wife of a drug dealer, submitted an affidavit alleging that she had "no knowledge whatsoever" of any drug possession, storage, or trafficking by her husband in their home and that her husband "never consumed, displayed, or spoke of narcotics or drug related materials in [her] presence." *Id.* at 99. The court in *Black Ledge* concluded that "more detailed factual substance in support of her claim of ignorance was required" to defeat summary judgment. *Id.* at 102 (quotation marks omitted). The same is true in the instant case, especially in light of the fact that the government's evidence suggests that the claimant here was more involved in drug activity than was the claimant in *Black Ledge.*

Claimant argues that some of the government's evidence that establishes claimant's knowledge consists of hearsay informant information. *See* Claimant's Objection at 3. Assuming only for the argument that the informant information—although clearly admissible on the issue of probable cause, *Black Ledge,* 897 F.2d at 102—is not admissible on the issue of claimant's innocent ownership defense, claimant does not address the fact that much of the evidence (including, for example, evidence of claimant's presence during the police search of defendant property on March 8, 1991) consists of direct observations of police officers. Undisputed Facts at 4. In any event, in *Black Ledge* the Court of Appeals ruled that the fact that the government relies in part on informant information is not dispositive where, as in the instant case, the claimant does not present a genuine issue of material fact. *Id.* at 102; *see also Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir. 1985) (while caution should be exercised in granting summary judgment where state of mind is an issue, "the existence of undis-

puted facts can provide an adequate basis" for summary judgment).

### CONCLUSION

For the reasons stated above, the government's motion for summary judgment is GRANTED. The government shall submit a proposed form of order by May 16, 1991 to serve as the decree of forfeiture.

It is so ORDERED.