UNITED STATES of America, Plaintiff,

v.

PROPERTY IDENTIFIED AS 1813 15th STREET N.W., WASHINGTON D.C. Further Described as Square 206, Lot 131, Defendant.

Civil Action No. 95–2014(RCL).

United States District Court,
D. Columbia.

Feb. 27, 1997.

Robert E. Eaton, Jr., William R. Cowden, Washington, D.C., for Plaintiff.

David S. Handzo, Robert M. Portman, Marc A. Goldman, Lois McKenna Henry, Jenner & Block, Washington, D.C., for Defendant.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

The plaintiff United States of America filed this claim seeking forfeiture of defendant property pursuant to Title 21 U.S.C. § 881(a)(7). Plaintiff moves for summary judgment. For the reasons set forth herein, the court will grant plaintiff's motion and order the defendant property forfeited.

## *I. FACTS*

Recently deceased claimant Rita Andrews lived as the owner of the three-story row house located at 1813 15th Street for some thirty-five years. Since 1989, a disability resulting from a car accident confined claimant to the first floor of the dwelling. The remaining rooms on the second and third floors were rented out to family members or friends.

On September 14, 1994, Metropolitan Police Department (MPD) Officer Timothy Allman observed a man later identified as Nathaniel Walker make four drug sales in the vicinity of Block 1800 of 15th Street. Shortly thereafter, Allman watched as Walker entered the defendant property 1813 15th Street, at the time owned and controlled exclusively by claimant Andrews. Three days later, MPD Officer Philip Burton saw Walker emerge from said premises and, over the course of two hours, swap small objects with pedestrians in exchange for money. Analysis revealed that the objects were in fact small ziplock baggies containing a substance that field-tested positive for the presence of cocaine.

Probable cause was found to search defendant property, and a valid search warrant was issued on September 19, 1994. Execution of the warrant resulted in the confiscation of numerous ziplock bags containing heroin, two guns, $1261 cash, hundreds of empty ziplock bags, and other drug-related paraphernalia.[1] Five men were arrested for drug-related offenses, two of whom, David Atkinson and claimant's son Joseph Duckett, resided at defendant property. Four of the five pled guilty to crimes ranging from attempted distribution of cocaine (Walker, stemming from the September 17 incident) to possession of drug paraphernalia.

Claimant, confined to the first floor, was present throughout the execution of the warrant. Only one illegal item, an unregistered gun, was found on her floor. Claimant was warned by MPD officers that failure to control the drug problem that obviously existed at her residence would leave the property subject to forfeiture. In addition, two certified letters sent by the U.S. Attorney's Office informed claimant that unless action was taken to curb the illegal narcotics activity, forfeiture of the residence could result. The first of these letters contained tips on how to keep the premises drug-free. Although both letters arrived at the house, claimant asserts she received only the first. The letter was never responded to.

Between October of 1994 and October of 1995, claimant took no formal steps to prevent the convicted drug offenders from returning to reside at her property. Neither David Atkinson nor Joseph Duckett was asked to vacate the claimant's dwelling. In addition, claimant admits to having knowledge that Duckett was a drug-user while he resided in her house.

In her affidavit, claimant states "I did not want to incur the stress of dealing with the drug problem myself on an on-going basis." As a result, claimant requested her daughter, also a resident of the property, take steps to insure that no more illegal narcotics activity transpire on the premises. These somewhat ineffectual steps included locking the doors at night to prevent a free flow of traffic into the house, and denying strangers entrance to the dwelling. All residents, including those convicted of drug offenses, still had unlimited access, as did any individual these residents chose to allow to enter. Claimant's daughter also spoke with her brother Duckett, her son Atkinson, and her friend Walker, demanding that they not partake in drug-related activity in or near the house.

On October 13, 1995, a MPD informant sought to purchase narcotics at defendant property. He met the seller on the front steps of the property, and was told to proceed around to the back. The seller entered the house, reappearing in the rear of the dwelling. The seller proceeded to sell the informant a substance that was later tested and proven to be cocaine.

For the second time, a valid search warrant was issued and executed on defendant property. All told, MPD officers seized 1.529 grams of crack cocaine wrapped in eighteen small ziplocks, 2.656 grams of crack cocaine in one larger ziplock, .138 grams of heroin in two black ziplocks, hundreds of empty ziplocks, some with controlled substance residue, and $266 cash. Police also found examples of drug paraphernalia so numerous that they could not reasonably document it all.

Unlike the first raid, on this occasion police found both drugs and drug paraphernalia on the first floor of the house. Said drugs were seized in plain view, located on the dining room table just outside the claimant's room. Claimant was inside her room when the warrant was executed. She claims no knowledge of the drugs found just outside her room. Her daughter stated that the illegal contraband was not present on the table when she passed through the dining room some ten minutes prior to the warrant's execution. In addition, police confiscated numerous empty ziplock bags from the claimant's room. Claimant alleges to have no knowledge of these baggies.

Following this second police action, the United States sought forfeiture of the prop-

---

**1.** Such "drug paraphernalia" included eight smoking pipes, a bottle top cooker, and an empty syringe.

erty pursuant to Title 21 U.S.C. § 881(a)(7). The claimant has since taken strong measures to prevent the continued use of her property for the purposes of illegal narcotics activities. Nathaniel Walker has been forbidden from entering the premises. Joseph Duckett was told not to return. David Atkinson has moved out. Claimant's daughter has more strictly regulated the flow of visitors into the house. MPD officers concede that the actions appear to have curtailed the drug activities that existed at the property between September of 1994 and October of 1995.

The only current issues are whether the court should grant the plaintiff's motion for summary judgment, and, if so, if such a forfeiture violates the Excessive Fines Clause of the Eighth Amendment. For the following reasons, the court believes that summary judgment should be granted, and that said forfeiture is not in any way unconstitutional.

## II. DISCUSSION

Plaintiff United States seeks summary judgment allowing for the forfeiture of defendant property pursuant to Rule 56(c) of the Federal Rules. Generally, summary judgment is granted in cases in which there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is considered genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* For the purposes of the motion, the moving party bears the initial burden of proving the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once done, the burden shifts to the defendant to prove otherwise. *Id.* at 324, 106 S.Ct. at 2553. All inferences gleaned from the facts must be viewed in a light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In the case at bar, Federal Rule 56 must be applied to the relevant forfeiture law. *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983). Section 881(a)(7) of the United States Code states that all real property used to "facilitate the commission of a violation" punishable by more than one year imprisonment is subject to forfeiture to the United States. 21 U.S.C. § 881(a)(7). In addition, such property shall not be forfeited if the owner of the property can establish that the illegal activity occurred without their knowledge or consent. *Id.*

For claims brought under § 881, the government has the initial burden of establishing probable cause to believe that the property was used to facilitate the commission of a crime punishable under the statute. *United States v. One 1973 Rolls Royce, V.I.N. SRH–16266,* 43 F.3d 794, 804 (3d Cir. 1994). To prove probable cause, the government may rely upon hearsay evidence. *One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d at 1281. Once done, the burden shifts to the claimant to prove by a preponderance of the evidence one of two defenses: either that the property was not used to facilitate the commission of a felony, or that it was done so without the claimant's knowledge or consent. *United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.1984). Failure to prove either defense results in forfeiture of the property.

### A. Probable Cause

To be successful in a § 881 proceeding, the plaintiff must first establish probable cause to show that the property was used to facilitate the commission of a felony punishable under the statute. Probable cause is defined as a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. $83,320 in U.S. Currency,* 682 F.2d 573, 577 (6th Cir.1982) (quoting *United States v. $22,287.00 in U.S. Currency,* 520 F.Supp. 675, 678 (E.D.Mich.1981)). Plaintiff must show probable cause to believe the property "facilitated" the commission of a crime. Facilitation can be proven by establishing a "substantial connection" between the illegal activity and the property being forfeited. *United States v. Parcel of Land and Residence at 28 Emery Street,* 914 F.2d

1, 3–4 (1st Cir.1990).[2] Thus, if probable cause verifying such a connection exists, the plaintiff's initial burden of proof is met.

■ Here, no reasonable jury could conclude that the plaintiff did not have probable cause to believe that the defendant property was being used to facilitate the commission of a crime punishable under the statute. After being asked to sell drugs by an MPD informant, an occupant of the residence traveled from the front porch area, through the house, and reappeared at the back entrance of the dwelling. He proceeded to sell the informant cocaine. From this incident, a judge was able to find ample probable cause to issue a search warrant allowing MPD officers to examine the entire defendant property.

■ The police discovered an abundance of evidence that tended to prove that the house had a "substantial connection" to the sale of narcotics: illegal drugs packaged in ziplock bags common in street distribution, drugs located in plain view on a table, and other assorted drug paraphernalia[3] that point to the dissemination of narcotics. David Atkinson, a resident of the property, pled guilty to possession with intent to distribute cocaine, a felony under 21 U.S.C. § 841(a). Residents Atkinson and Duckett each had prior records of drug convictions. Claimant admitted that she knew Duckett had been under the influence of drugs while on the premises. The plaintiff need not have prima facie proof demonstrating a substantial connection between the illegal act and the property, merely reasonable grounds for a belief of guilt. *United States v. $83,320 in U.S. Currency*, 682 F.2d at 577. The residence need not have caused the crime, merely facilitated or had a substantial connection to the prohibited event in question. *United States v. Parcel of Land and Residence at 28 Emery St.*, 914 F.2d at 3–4. Based on the

facts of the record, there is clearly present sufficient probable cause to believe the property facilitated the distribution of drugs, a felony punishable under the United States Code.

To avoid summary judgment on this issue, the claimant must demonstrate that a reasonable jury could find that no probable cause existed. Thus, they must show a genuine issue as to whether or not the plaintiff has reasonable grounds to believe the property was being used to facilitate a crime of greater than one year incarceration. Claimant first attempts to rely on the affidavits of residents, who state that no drugs were ever sold or prepared to be sold from the defendant property. To claimant, the affidavits create a genuine issue of material fact.

Claimant is mistaken. The evidence tending to show probable cause of facilitation of a crime punishable by greater than one year incarceration is overwhelming: the October 14th drug sale at the house to the MPD informant, the 1995 raid that recovered drugs and drug paraphernalia, the conviction of resident Atkinson for possession with intent to distribute. In the 1995 search, the seized drugs were packaged for distribution. Much of the paraphernalia found were ziplock baggies, articles inextricably linked with the sale of illegal drugs. The probable cause standard is merely reasonable grounds to believe facilitation, not prima facie proof. *$83,320 in U.S. Currency*, 682 F.2d at 577. Clearly, reasonable grounds exist to believe that the property had a "substantial connection" to a crime punishable by over one year in prison. Under these circumstances, sworn affidavits claiming otherwise do not create a genuine issue as to whether probable cause was present. No reasonable jury could find otherwise.

■ In addition, claimant asserts that, since the amounts of drugs and the drug

---

**2.** Other definitions for "facilitate" do exist. For example, the United States Court of Appeals for the Third Circuit has defined facilitation to mean "a reasonable ground for belief that the use of the [property] made the [illegal act] less difficult and allowed it to remain more or less free from obstruction or hindrance." *United States v. One 1977 Lincoln Mark V. Coupe*, 643 F.2d 154 (1981) (quoting *United States v. One 1950 Buick Sedan*,

231 F.2d 219, 222 (3d Cir.1956)). Regardless of which definition of facilitate is used, plaintiffs have demonstrated enough unrebutted probable cause to sustain a summary judgment motion in their favor.

**3.** Such items include numerous empty ziplocks, including some found in the claimant's bedroom.

paraphernalia seized from the residence are consistent with personal use, the drugs offer no proof of narcotics distribution. *Rather, the drugs are merely evidence of possession, a misdemeanor with a maximum sentence of only six* months. Because the evidence need only provide reasonable grounds, not prima facie proof, to believe the property facilitated a crime in excess of one year, this argument fails as well. No reasonable fact-finder could determine that a house containing packaged drugs, found amongst paraphernalia consistent with narcotics distribution, did not provide reasonable grounds to show that the property was substantially connected to a crime punishable by greater than one year incarceration. Factor in the October 13 drug sale at the house and the conviction of resident Atkinson for possession with intent to distribute, and clearly it becomes implausible to determine that no probable cause existed in this case.[4]

### B. The Innocent Owner Defense: Knowledge

■ Once the plaintiff has established probable cause, the burden of proof shifts to the claimant to prove by a preponderance of the evidence either that he or she had no knowledge of the illegal activity, or, in the alternative, that he or she did not consent to such activity occurring. *United States v. 141st Street Corporation, by Hersh,* 911 F.2d 870, 878 (2d Cir.1990). This "innocent owner" defense is an affirmative defense that must be proven by the claimant. *United*

States v. One Parcel of Property, Located at 755 Forest Road, Northford, Conn., 985 F.2d 70, 72 (2d Cir.1993).

■ Whether the claimant must prove absence of actual knowledge of the illegal activity or the more demanding burden of absence of constructive knowledge of the illegal activity is a split issue amongst the circuits. *Compare United States v. Four Million, Two Hundred . Fifty–Five Thousand,* 762 F.2d 895, 906 (11th Cir.1985) (holding that the innocent owner defense hinges upon the claimant's actual, not constructive, knowledge) *with One Parcel of Property, Located at 755 Forest Road, Northford, Conn.,* 985 F.2d at 72 ("Where an owner has engaged in willful blindness as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture."). For purposes of the motion, this court will adopt the more lenient "actual knowledge" test.[5] Applying this standard to the facts, it is clear that the claimant has failed to sustain the burden necessary to avoid summary judgment.

■ To avoid forfeiture, claimant has the burden to come forward and establish the absence of actual knowledge. *Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d at 907. Applying this burden to the issue of *summary* judgment, the claimant must do more than rely on his or her pleadings: he or she must create a genuine issue of material fact as to the question of knowledge. The quantum of proof necessary to satisfy such a burden and avoid summary

4. Since there exists an abundance of probable cause, the court need not reach the issue of whether a second conviction of simple possession (thereby making it a crime of felony possession) facilitated by the property is sufficient to render the property forfeitable. Were it to be determined, however, that there was in fact a genuine issue of material fact as to whether or not the property facilitated the distribution of drugs, it is clear that felony possession alone *is* enough to allow for forfeiture. Congress has deemed it a felony if one previously convicted of a drug offense is subsequently convicted again. 21 U.S.C. § 884. If the property has a "substantial connection" to the felony simple possession, the residence has facilitated a felony punishable by greater than one year in prison. *United States v. Two Parcels of Property Located at 19 and 25 Castle Street,* 31 F.3d 35, 39 (2d Cir.1994). In the case at bar, resident Joseph Duckett admits

in his affidavit to possessing narcotics in the defendant residence. Duckett has previously been convicted of multiple drug offenses. This possession is thus considered felony possession under the statute. As such, the government has probable cause to believe that the house which Duckett was residing in when he possessed the drugs had facilitated the perpetration of a crime punishable under the statute.

5. By utilizing the "actual knowledge" standard, the Court does not mean to express a preference for this standard over the other. The Court merely adopts this test because it is the more lenient of the two: if claimant cannot satisfy her burden under this lower standard, her claim would certainly fail under the more demanding test described in *One Parcel of Property,* 985 F.2d at 72.

judgment varies according to the facts and circumstances surrounding the case. *United States v. 8848 South Commercial St., Chicago, Ill.,* 757 F.Supp. 871, 881 (N.D.Ill.1990). In many circumstances, a claimant's affidavit swearing no knowledge of the illegal activity will be sufficient to create a genuine issue of material fact. *United States v. Lot 9, Block 2 of Donnybrook Place,* 919 F.2d 994, 999 (5th Cir.1990); *United States v. Premises Known as 717 So. Woodward St.,* 2 F.3d 529, 534 (3d Cir.1993). Thus, the claimant's denial will sometimes have established an issue for the jury to resolve.

 It is clear from the case law, however, that a sworn affidavit denying knowledge of illegal activity is not always enough to create a genuine issue of material of fact. See. e.g., *United States v. Property Located at 15 Black Ledge Drive,* 897 F.2d 97, 102 (2d Cir.1990); *United States v. One Parcel of Property Located at 101 Kimberly Ave., New Haven, Conn.,* 765 F.Supp. 39, 43 (D.Conn. 1991); *United States v. 8848 South Commercial St., Chicago, Ill.,* 757 F.Supp. 871, 883 (N.D.Ill.1990); *United States v. One Single Family Residence Located at 2901 S.W. 118th Court, Miami, Fla.,* 683 F.Supp. 783, 791 (S.D.Fla.1988). These cases held that the greater the evidence the government proffered tending to prove actual knowledge, the more difficult it became for the claimant to create the genuine issue necessary to avoid summary judgment. Faced with overwhelming evidence to the contrary, a claimant cannot rely upon mere denials to prove an absence of actual knowledge, but rather must come forward with something more substantial.

In the case at bar, the government offers overwhelming evidence of actual knowledge. Police executed two drug raids on the defendant property, both times discovering drugs and drug-related paraphernalia arrayed throughout the house. On the second occasion, drugs were seized in plain view from a table located just outside the claimant's bedroom. The claimant admits to knowing that Joseph Duckett, a resident, was under the influence of narcotics while on her property. Police and government officials warned claimant on more than one occasion about the rampant drug problems present on her property.

In addition, claimant clearly states in her affidavit that, after the initial 1994 raid, she was "distressed by discovering the existence of drug problems at [her] property ... [she] did not want to incur the stress of dealing with the drug problem [her]self." Rita A. Andrews Aff. at ¶ 10. Her subsequent efforts at ridding the property of the narcotics do not suggest that claimant had no actual knowledge of a drug problem. Rather, they tend to prove just the opposite: that claimant did have knowledge of the illegal activity, else why take extra steps to insure that the property was free from narcotics activity?

Claimant contradicts her affidavit and the impressive litany of evidence pointing towards knowledge by simply denying awareness. In addition, residents convicted of drug charges also swear that they intentionally hid their illicit narcotics activities from claimant. Such evidence is not sufficient to create an issue of fact in the mind of a reasonable juror. There may be situations in which a bare denial of knowledge of illegal endeavors is enough to raise an issue of material fact, thereby precluding the issuance of summary judgment. *Premises Known as 717 So. Woodward St., Allentown, Pa.,* 2 F.3d at 534. This case, however, is not one of them. Based upon the overwhelming evidence that points to actual knowledge, claimant must do more than just deny awareness.[6] In light of the record, no reasonable individual could find that the claimant did not have actual knowledge of

---

6. This court realizes that the decision to grant summary judgment when dealing with issues of a witness' state of mind is a delicate matter. Often, such matters are left to the jury solely because the issues to be decided depend on the credibility the jury will attach to the witness's in-court testimony. *See Metzger v. Osbeck,* 841 F.2d 518, 521 (3d Cir.1988). In the case at bar, no such credibility issues could potentially arise. The claimant, Ms. Andrews, is now deceased. A jury could therefore never be called upon to attach a level of credibility to be given to Ms. Andrews in-court testimony, for such testimony can now never take place.

illegal activity occurring on her property.[7] The lack of knowledge defense here thus fails to preclude summary judgment.

### C. The Innocent Owner Defense: Consent

The innocent owner defense also allows an individual to avoid forfeiture by proving that he or she did not consent to the illegal activities occurring on the property. *141st Street Corp., by Hersh*, 911 F.2d at 878. The substantial majority of jurisdictions who have chosen to define consent have required a party to prove that he or she took "all reasonable steps to prevent illicit use of the premises once one acquires knowledge of that use."[8] *See e.g., United States v. Two Parcels of Property Located at 19 and 25 Castle Street*, 31 F.3d 35, 40 (2d Cir.1994); *United States v. One Parcel of Real Estate at 1012 Germantown Rd., Palm Beach County, Fla.*, 963 F.2d 1496, 1505 (11th Cir.1992); *141st Street Corp., by Hersh*, 911 F.2d at 879. Thus, to avoid summary judgment, the claimant must supply evidence to allow a reasonable juror to conclude that, under the circumstances, all reasonable steps were taken to curtail the illegal activity.

Clearly, claimant had failed to supply such evidence. Claimant concedes in her brief that the measures she took to prevent the illegal acts were not *all* the reasonable steps that could have been taken. She contends that the steps taken by her and her daughter—locking doors at night, attempting to monitor the flow of visitors, verbally forbidding residents to partake in illicit ven-

tures while on the property—were reasonable steps, not all reasonable steps. In light of the standard this Court is adopting,[9] evidence to prove *some* reasonable steps were taken is insufficient to preclude summary judgment.

Even without the concession, it is obvious that the steps claimant took to rid her property of the illegal endeavors are not sufficient to satisfy the standard. Claimant's and her daughter's efforts did nothing to deter narcotics from being used at the property. Convicted drug users were allowed to continue residing at the house. Locked doors to keep out unwanted hooligans were meaningless when all residents retained keys to allow in whomever they pleased. The front exterior of the house was rarely checked in attempts to discover illegal acts. Drug activity continued to prosper, as evidenced by the drugs and drug paraphernalia seized during the 1995 raid. Based on the facts, no reasonable juror could conclude that all reasonable steps were taken to frustrate criminal acts from occurring on the defendant property.[10] As such, claimant's efforts cannot prevent summary judgment from being granted.

### D. Excessive Fines Clause of the Eighth Amendment

Claimant lastly alleges that forfeiture of the home would constitute an excessive fine in violation of the Eighth Amendment to the Constitution. The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The

---

7. The District of Columbia Circuit has stated that "the natural inference is that those who live in a house know what is going on inside, particularly in the common areas." *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C.1991). This applies as much to fully competent seventy-three year old women as it does to anyone else.

8. The District of Columbia Circuit has not yet ruled upon this issue.

9. This Court chooses to adopt the "all reasonable steps" standard not only because of the widespread support it has received amongst the circuits. As *141st Street* pointed out, this standard is derived from dictum of the Supreme Court decision in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There, the Court hinted that it might

be unconstitutional to force an uninvolved property owner to forfeit his property when the owner "had done all that reasonably could be expected to prevent the proscribed use of his property." *Id.* at 680–90, 94 S.Ct. at 2090–95. It is from this Supreme Court decision that the "all reasonable efforts" standard arose.

10. The simple fact that claimant was successful in ridding her property of the illicit activity following the commencement of this forfeiture action proves that not all reasonable steps were taken. If the steps were successful in foiling the illegal use of the house after the 1995 search, the same steps logically could have been just as successful if taken the year prior.

Supreme Court recently ruled that *in rem* civil forfeiture cases like the one at issue is "punishment", and is therefore subject to the Excessive Fines Clause of the Eighth Amendment. *Austin v. United States*, 509 U.S. 602, 622, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). The Court refused, however, to define any set guidelines to assist in determining if a particular civil forfeiture was in fact "excessive." [11] *Id.*

In the wake of *Austin*, two major standards to calculate if *in rem* civil forfeitures are excessive have arisen: the instrumentality test and a combination of the instrumentality test with a proportionality standard. The Court need not decide which test to adopt, for under either test, the forfeiture of the defendant property is not an excessive fine under the Eighth Amendment.

### 1. The Instrumentality Test

The instrumentality test articulated in *United States v. Chandler*, 36 F.3d 358, 365 (4th Cir.1994), looks to "(1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can be readily separated from the remainder." *Id.* To more clearly define the factors, courts could look to the importance of the property in the commission of the crime, whether the use of the property was repeated or isolated, and whether the property was important to the performance of the illicit act. *Id.* Courts were to apply a balancing test, with no one factor being dispositive. The focus was solely on whether the property was a "substantial and meaningful instrumentality in the commission of the offense." *Id.* The value of the property was irrelevant.

Applying the instrumentality test to the facts at issue, the scales clearly fall to the side of non-excessiveness. True, the second *Chandler* factor (role and culpability of the owner) is lacking in this case. No one factor,

however, is to be dispositive. The two other elements of the test—the nexus between the offenses and the property and possibility of separating the offending property from a remainder—weigh heavily in favor of the plaintiff. Thanks to the evidence found during the two police searches, the house becomes inextricably linked to the covert sale of illegal narcotics. In addition, the fact that drug paraphernalia was strewn throughout the defendant property forecloses the possibility of separating the offending property from the unsullied remainder. Indeed, no part of the three-story house appeared to be immune from the illicit activities. As such, forfeiture of the house is not excessive when applying the instrumentality test.

### 2. The Instrumentality/Proportionality Test

Some courts have chosen to adopt the instrumentality test combined with a proportionality analysis. *United States v. Milbrand*, 58 F.3d 841, 847 (2d Cir.1995). The proportionality aspect of the analysis attempts to compare the severity of the forfeiture with the gravity of the crime committed. *Id.* at 847–48. The results of this are combined with the relationship that exists between the property, including the length of the illicit use and the importance of the property to the illegal activity, and the degree of culpability of the owner. *Id.*

Granted, the culpability of the claimant is not at issue. No evidence exists linking Ms. Andrews with the unlawful activities so prevalent on her property. The other factors, however, override this fact, and therefore tip the scales to the side of a non-excessive forfeiture. The close connection between the dwelling and the illegal acts has already been established. Comparing the length of time between the first and second police searches reveals two different occasions over a year apart in which felonious conduct took place in the house. The harmful impact illegal nar-

---

11. In a separate opinion, Justice Scalia chose to address the issue of guidelines. Focusing upon the relationship between the property and the charged offense, Scalia stated that "the question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." *Austin v. United States*, 509 U.S. 602, 628, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring in part and concurring in the judgment). It is from this concurring opinion that courts derived the instrumentality test.

cotics have on our society is an issue whose significance cannot not be underestimated. Fighting the drug trade wastes money, occupies resources, and costs lives. In light of this, clearly the forfeiture of a building that fostered and sheltered illegal narcotics distribution for over a year's time cannot be considered overly harsh or severe.

The claimant was warned as to what would happen if steps were not taken subvert the unlawful ventures emanating from her property. Based on these circumstances, it cannot be said that the forfeiture of this dwelling violates the Eighth Amendment of the Constitution, regardless of which test is applied.

## III. CONCLUSION

The motion of the United States for summary judgment will be GRANTED, and the defendant property will be ordered forfeited. A separate order shall issue this date.