215 P.3d 166 (2009)
In the Matter of the FORFEITURE OF ONE 1970 CHEVROLET CHEVELLE.
In the Matter of the Forfeiture of One 2004 Nissan Sentra.
Alan Roos and Stephne Roos, Petitioners,
v.
Snohomish Regional Drug Task Force, Respondent.
No. 81116-4.
Supreme Court of Washington, En Banc.
Argued February 26, 2009.
Decided September 3, 2009.
*167 Peter Mazzone, Michael Harald Torgesen, Mazzone and Markwell, Everett, WA, for Petitioners.
Janice E. Ellis, Seth Aaron Fine, Snohomish County Prosecutor's Office, Everett, WA, for Respondent.
*168 C. JOHNSON, J.
¶ 1 This case involves a challenge to an order of the forfeiture of two automobiles pursuant to RCW 69.50.505, drug trafficking laws. Alan and Stephne Roos owned two cars that their son, Thomas, was found to be using for trafficking drugs. The hearing examiner found that the Rooses should have known of the illicit activities for which their cars were used and were, therefore, not considered "innocent owners" under RCW 69.50.505(1)(d)(ii). The hearing examiner rejected an actual knowledge standard and ordered the vehicles forfeited. The Superior Court affirmed the order of forfeiture and the Court of Appeals affirmed.
¶ 2 The definition of "knowledge" applied by these courts is inconsistent with our cases, other similarly worded statutes, and the relevant legislative history. We hold the term "knowledge" under the meaning of RCW 69.50.505(1)(d)(ii) is satisfied only by proof of actual knowledge. We reverse.

FACTS
¶ 3 Between June 10, 2005 and September 9, 2005, Thomas Roos was found by police four times to be either unconscious in or operating a vehicle that contained, among other things, various controlled substances and large sums of cash. Each time the police arrested and charged Thomas accordingly. On two of these occasions, incident to arrest and pursuant to RCW 69.50.505, the Snohomish Regional Drug Task Force (SRDTF) seized a 2004 Nissan Sentra and a 1970 Chevrolet Chevelle. The Nissan was titled to Alan Roos and the Chevrolet was titled to Stephne Roos, Thomas' parents.
¶ 4 Both Alan and Stephne filed claims for return of the vehicles, asserting they were subject to the "innocent owner" exception in the vehicle forfeiture provision of RCW 69.50.505(1)(d)(ii). Alan and Stephne claimed that, while they had given Thomas permission to use the cars on a temporary basis, they had no actual knowledge of any illegal use of their vehicles.
¶ 5 At the administrative hearing, a hearing officer for the Snohomish County sheriff found the SRDTF proved by a preponderance of the evidence that Thomas used both vehicles to facilitate drug trafficking, which subjected the vehicles to forfeiture under RCW 69.50.505. The hearing officer applied an objective standard of knowledge (knowing or having reason to know) and found Alan and Stephne had reason to know what Thomas was up to and failed to take appropriate steps to ensure their vehicles were not used in such a manner. The hearing officer did not make any finding that Alan or Stephne had actual knowledge about Thomas' illegal use of the Nissan or the Chevrolet. The hearing officer ordered the vehicles forfeited.
¶ 6 Alan and Stephne appealed, and the Snohomish County Superior Court affirmed the order of forfeiture. Alan and Stephne appealed that ruling, and the Court of Appeals affirmed the trial court and held the objective standard of knowledge is appropriate for determining whether owners are "innocent owners" under RCW 69.50.505. In re Forfeiture of One 1970 Chevrolet, 140 Wash. App. 802, 167 P.3d 599 (2007). Alan and Stephne's petition for review by this court was granted. In re Forfeiture of One 1970 Chevrolet, 164 Wash.2d 1007, 195 P.3d 87 (2008).

ISSUE
¶ 7 Does the phrase "without the owner's knowledge" in RCW 69.50.505(1)(d)(ii) permit objective knowledge (reason to know) to satisfy the term "knowledge" or is subjective knowledge (actual knowledge) required?

ANALYSIS
¶ 8 This matter concerns the interpretation of RCW 69.50.505(1)(d)(ii), the innocent owner provision. We review the meaning of a statute de novo because it is a question of law. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). The objective of statutory interpretation is to carry out legislative intent. Where a statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent. In determining the meaning, we may account for the ordinary meaning of words, basic rules of grammar, and the statutory context to conclude *169 what the legislature has provided for in the statute and related statutes. When a statute remains susceptible to more than one reasonable meaning, it is appropriate to resort to other aids of construction, such as legislative history.
¶ 9 RCW 69.50.505 is the seizure and forfeiture provision of the Uniform Controlled Substances Act, which provides in relevant part:
(1) The following are subject to seizure and forfeiture and no property right exists in them:
....
(d) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale, delivery, or receipt of [controlled substances], except that:
....
(ii) No conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent.
(Emphasis added.) Subsection (1)(d)(ii) is commonly referred to as the "innocent owner" exception.
¶ 10 RCW 69.50.505(5) provides that, "[i]n all cases, the burden of proof is upon the law enforcement agency to establish, by a preponderance of the evidence, that the property is subject to forfeiture." Once established, RCW 69.50.506(a) shifts the burden "of any exemption or exception ... upon the person claiming it." Tellevik v. 31641 W. Rutherford St., 120 Wash.2d 68, 89, 838 P.2d 111, 845 P.2d 1325 (1992).
¶ 11 Here, the hearing officer properly found that the vehicles were subject to forfeiture. Alan and Stephne do not challenge this finding. As such, the burden shifted to Alan and Stephne to establish they had no "knowledge" pursuant to RCW 69.50.505(1)(d)(ii). The parties disagree as to the meaning of "knowledge" in this statutory exception to forfeiture. The hearing officer found objective knowledge (i.e., reason to know) sufficient to satisfy the statutory requirements, as did the Court of Appeals.
¶ 12 In holding that objective knowledge is sufficient to satisfy RCW 69.50.505, the Court of Appeals relied on Tellevik, 120 Wash.2d 68, 838 P.2d 111 and Escamilla v. Tri-City Metro Drug Task Force, 100 Wash. App. 742, 753-54, 999 P.2d 625 (2000).[1] Although both cases involve interpretation of the similarly worded forfeiture statute for real property, a closer read of these cases shows the Court of Appeals has misapplied its holdings here.
¶ 13 Tellevik concerned the forfeiture of real property used in trafficking drugs. While Tellevik focused on the definition of "consent," as used in the statute, our discussion there sheds light on the definition of "knowledge" for the purposes of RCW 69.50.505. There, we defined consent as "`the failure to take all reasonable steps to prevent illicit use of [the] premises once one acquires knowledge of that use.'" Tellevik, 120 Wash.2d at 88, 838 P.2d 111 (emphasis added) (alteration in original) (quoting United States v. 141st St. Corp. by Hersh, 911 F.2d 870, 879 (2d Cir.1990)). In adopting this definition from 141st Street, we noted that this definition makes sense because "`when combined with [the disjunctive] construction of the phrase `knowledge or consent,' it provides a balance between the two congressional purposes of making drug trafficking prohibitively expensive for the property owner and preserving the property of an innocent owner. A claimant with knowledge of the illegal use to which his property is put may defend on the basis of lack of consent....'" Tellevik, 120 Wash.2d at 88, 838 P.2d 111 (alteration in original) (emphasis added) (quoting 141st St., 911 F.2d at 879). This explanation means that determining whether there is a lack of consent first requires that the claimant has acquired knowledge, the first term in the statute's disjunctive construction.
*170 ¶ 14 In 141st Street, the court engaged in the following discussion about the term consent:
Consent is "compliance or approval esp[ecially] of what is done or proposed by another." Webster's Third New International Dictionary 482 (1971). In order to comply with or approve of something, it is only common sense that one must have knowledge of it. Thus, in order to consent to drug activity, one must know of it.
911 F.2d at 878 (emphasis added). Similarly, it is only common sense that when one says someone knows of something or has knowledge of something, actual knowledge is contemplated knowledge not objective knowledge (reason to know).
¶ 15 The 141st Street court went on to state that "to show lack of consent [an innocent owner claimant must] prove that he did all that reasonably could be expected to prevent the illegal activity once he learned of it." 911 F.2d at 879 (emphasis added). The court concluded that it was entirely appropriate to trigger the disjunctive means of claiming one is an innocent owner after the person "acquires knowledge" of the illicit use of one's property. The logical extension of the phrase "acquired knowledge" means that one must actually possess certain knowledge not that one merely should have (had reason to) acquired the knowledge. In other words, the court's phraseology interpreted the law to require a subjective knowledge standard (actual knowledge), not an objective standard (reason to know). Because the 141st Street court's ruling was the foundation for determining consent in Tellevik, the subjective (actual) knowledge standard is likewise warranted when determining the definition of the term "knowledge."
¶ 16 Such an interpretation also comports with the plain language of the "innocent owner" provision. RCW 69.50.505(1)(d)(ii) ("No conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent." (emphasis added)). The provision's use of the term "knowledge" expresses a legislative choice in adopting a specific standard.
¶ 17 The legislature had several options to choose from in crafting the language of this provision. It could have defined knowledge with an objective definition by using phrases like "knows or has reason to know," "knowing or having reason to know," or "actual or constructive knowledge." In fact, the legislature could have expressed its intent in a variety of ways. But the legislature chose to use the term "knowledge."
¶ 18 In other statutes, the legislature has utilized terms to require objective versus subjective knowledge. See, e.g., RCW 4.24.630(1) ("For purposes of this section, a person acts `wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." (emphasis added)); RCW 19.108.010(2)(b)(ii) ("At the time of disclosure or use, knew or had reason to know ..." (emphasis added)). Where the legislature uses certain statutory language in one statute and different language in another, a difference in legislative intent is evidenced. State v. Roggenkamp, 153 Wash.2d 614, 625, 106 P.3d 196 (2005). We assume the legislature means exactly what it says and interpret the wording of statutes according to those terms. Where the legislature uses different terms we deem the legislature to have intended different meanings. Because we recognize the legislature is familiar with objective versus subjective "knowledge," the use of "knowledge" on its own in the "innocent owner" provision establishes the legislature intended actual knowledge as the standard.
¶ 19 This legislative choice also makes sense in the overall context of what is occurring. The government has provided for the taking of one's property due to the criminal act of someone else. In another similar context, the legislature has established criminal liability based on someone else's acts, such as proof of aiding and abetting or accessory liability. RCW 9A.08.020.[2] Such instances *171 require proof of someone actually doing something to support or facilitate the commission of a crime or actually knowing and assisting in the criminal activity in order to be subject to criminal sanctions. Perhaps a person should know many things, but often the opposite could be true, like here: The parents could have just as easily presumed their son's criminal activities would stop after the first arrest just as they could have suspected their son's criminal activities would continue.
¶ 20 Turning back to Tellevik, we noted there that objective facts could be used to determine subjective knowledge. That is, where certain facts are able to be linked with reasonable inferences, it may raise a genuine issue of fact regarding what a person knows. Deriving reasonable inferences from objective facts about what a person's subjective knowledge was at the time is appropriate because it prevents the "I had my head in the sand" defense.
¶ 21 Tellevik, a consolidated case, concerned the forfeiture of the Wilsons' property (used as a primary residence) and the Pearsons' property (used as a rental property). Here, we are concerned only with the Pearsons' property. The Eastside Drug Task Force executed a search of the Pearsons' rental property and found a marijuana grow operation. Mr. Pearson was present during this search. In response to the possible forfeiture of her home based on the alleged drug trafficking, Mrs. Pearson moved for summary judgment under the "innocent owner" provision of RCW 69.50.505. The trial court granted summary judgment in favor of Mrs. Pearson.
¶ 22 On appeal, we found a genuine issue of fact as to whether Mrs. Pearson actually knew of her husband's illegal activities. The following facts were relevant: (1) Mrs. Pearson was residing in the house when the renovations were being made, including a trap door to the basement grow room where 40 marijuana plants were seized;[3] (2) Mrs. Pearson had joint control over the finances; and (3) the marijuana was being packaged and dried in her current residence. Indeed, the only "fact" presented in contradiction was Mrs. Pearson's denial of any knowledge of wrongdoing.
¶ 23 In contrast, here, the record in the Rooses' case provides many contradictory facts to suggest Alan and Stephne were not actually aware of Thomas' illegal activities involving their vehicles. For example, (1) Thomas did not live at home; (2) Thomas was leading a "secretive" life; and (3) "someone" in the household had been intercepting mail and voicemail, which may have provided Alan and Stephne with more information about Thomas' illegal activities. These facts contradict the idea that Thomas' parents were actually aware of his drug trafficking. Unlike the facts in Tellevik, we do not have sufficient objective facts here to determine the subjective knowledge of Alan and Stephne during the relevant time period of Thomas' criminal activity involving his parents' vehicles. As such, we cannot agree with the trial court and the Court of Appeals that Thomas' parents had actual knowledge but simply stuck their heads in the sand.

CONCLUSION
¶ 24 We hold the term knowledge, as used in RCW 69.50.505(1)(d)(ii) means subjective (actual) knowledge. We vacate the judgment of forfeiture of the vehicles, reverse the Court of Appeals, and remand for further proceedings.
WE CONCUR: ALEXANDER, C.J., SANDERS, CHAMBERS, and STEPHENS, JJ.
MADSEN, J., (concurring/dissenting).
¶ 25 This case presents the difficult question of what Alan and Stephne Roos "knew" *172 about their son Thomas Roos' use of two family cars to carry out his drug dealing activities. Two of Thomas' arrests for possession of controlled substances led to the seizure and forfeiture of the family's Nissan Sentra (Nissan) and Chevrolet Chevelle (Chevelle). The Rooses claimed to be "innocent owners" under the exception to forfeiture in RCW 69.50.505 stating they had no knowledge of their son's drug activity in the family cars.
¶ 26 I agree with the majority that at the time the first car was seized pursuant to Thomas' arrest, the Rooses had no knowledge that their son was using the family cars to deal drugs. However, when Alan was called to the scene of Thomas' third arrest and shown the various controlled substances the officers retrieved from the car, including a 110-gram brick of cocaine, the Rooses gained knowledge that Thomas was using the family cars to deal drugs. The hearing officer was correct to infer that from that point on, the Rooses' denial of Thomas' drug activity amounted to burying their heads in the sand. Pet. for Review, App. 2, at 12. From the time of Thomas' third arrest, Alan and Stephne were required to take all reasonable steps to prevent Thomas' further use of the family cars in order to qualify as innocent owners under the statute. Tellevik v. 31641 W. Rutherford St., 120 Wash.2d 68, 88, 838 P.2d 111, 845 P.2d 1325 (1992).
¶ 27 Because the Rooses did not take steps to prevent Thomas' use of the second car, the Chevelle, even after they knew of his arrest in the Nissan with a 110-gram brick of cocaine, I would uphold the hearing officer's forfeiture of the Chevelle. I respectfully concur in part and dissent in part.

FACTS[1]
¶ 28 Thomas was arrested on June 10, 2005, when he was spotted unconscious in the driver's seat of his parents' Nissan in a car wash parking lot. A search of the vehicle incident to arrest uncovered various controlled substances, including methamphetamine and OxyContin pills, $21,406 in cash, and a drug ledger. The Nissan was impounded when Thomas was arrested. A notice of impound was mailed to Alan and Stephne's home address in Bothell.[2] After he posted bail, Thomas forged his father's signature on the tow company receipt to get the Nissan released from impound.
¶ 29 On July 3, 2005, Thomas was pulled over while driving a friend's vehicle and arrested for driving with a suspended license. A search of the vehicle incident to arrest uncovered various controlled substances, including methamphetamine, cocaine, and Oxy-Contin pills. Thomas was charged with felony possession of methamphetamine. Stephne was notified of Thomas' arrest and arranged to have bail posted for his release. Stephne testified to learning of his June 10, 2005, arrest in the family Nissan at that time.
¶ 30 On August 16, 2005, Thomas was again arrested in the family Nissan after being found unconscious in the driver's seat while parked in a convenience store parking lot. A search incident to arrest again uncovered various controlled substances, including OxyContin pills and a 110-gram brick of cocaine. Alan was called to the scene by Thomas' younger brother who had driven by as the arrest was underway. At the scene, police officers showed Alan the items uncovered during the search of the Nissan and served Alan with a notice of forfeiture of the car. Alan testified that he was shown the cocaine "brick" when he arrived at the scene. Stephne posted Thomas' bail for this August arrest.
¶ 31 Alan and Stephne are jointly registered as owners of the Nissan. Stephne is the sole registered owner of the Chevelle. On August 19, 2005, Alan mailed a handwritten *173 claim for return of the Nissan. The letter stated: "I gave permission to my son, Thomas E. Roos, to borrow the car for temporary transportation. I was totally unaware of any uses or activities that may have occurred during the time." I Clerk's Papers (CP) at 42.
¶ 32 On September 1, 2005, Stephne was served by mail with notice of the forfeiture of the Nissan.
¶ 33 On September 9, Thomas was arrested in the Chevelle after being found unconscious in the driver's seat while parked in a convenience store parking lot. A search of the vehicle incident to arrest again uncovered various controlled substances and cash. Stephne again posted bail for Thomas. The Snohomish Regional Drug Task Force seized the Chevelle at this time.
¶ 34 On September 10, Stephne mailed a letter for return of the Nissan stating: "Our son, Thomas E. Roos, borrowed the car for a short time on 8-15-05 and 8-16-05. We had no knowledge of what he was using the car for or contents in the car at that time." I CP at 52.
¶ 35 With these incidents and facts in mind, the hearing officer cited our decision in 31641 West Rutherford Street, and Escamilla v. Tri-City Metro Drug Task Force, 100 Wash.App. 742, 753-54, 999 P.2d 625 (2000), to hold that from Thomas' July 3, 2005, arrest on, "[the Rooses] knew of his involvement with drugs." Pet. for Review, App. 2, at 11. He further commented that to qualify as an innocent owner, one cannot "`stick his/her head in the sand' to avoid" knowledge of illegal activity. Id. at 11-12. The hearing officer concluded, "The Roos[es] should have wondered whether and may well have actually feared that Thomas was using their family cars to traffic in drugs." Id. at 12.
¶ 36 The Court of Appeals affirmed the forfeiture of both cars and held substantial evidence supported the hearing officer's finding that Alan and Stephne were not innocent owners because "Alan and Stephne failed to demonstrate that they did not know, or should not have known, that Thomas was using [the cars] to facilitate the sale, delivery, or acquisition of controlled substances." In re Forfeiture of One 1970 Chevrolet Chevelle, 140 Wash.App. 802, 822, 167 P.3d 599 (2007).

ANALYSIS
¶ 37 At issue in this case is the meaning of the word "knowledge." In Washington, all vehicles used in any manner to facilitate the sale, delivery, or receipt of controlled substances are subject to seizure and forfeiture. RCW 69.50.505(1)(d). In cases where the owner of the seized property is not also the perpetrator of the crime, the legislature has allowed for the possibility that the property be returned. Every owner who did not commit the crime giving rise to the forfeiture does not automatically qualify as an "innocent owner" under the statute. To qualify as an innocent owner, the claimant must establish that the "act or omission" leading to forfeiture was "committed or omitted without the owner's knowledge or consent." RCW 69.50.505(1)(d)(ii).
¶ 38 The meaning of the word "knowledge" is a question of law and is reviewed de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). In Campbell & Gwinn, this court endorsed the idea that "`the plain meaning rule rested on theories of language and meaning, now discredited, which held that words have inherent or fixed meanings.'" Id. at 11, 43 P.3d 4 (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed.2000)). "The plain meaning rule requires courts to consider legislative purposes of policies appearing on the face of the statute [as well as] background facts of which judicial notice can be taken." State v. Riofta, 166 Wash.2d 358, 365, 209 P.3d 467 (2009) (internal quotation omitted).
¶ 39 In Rozner v. City of Bellevue, 116 Wash.2d 342, 348, 804 P.2d 24 (1991), we interpreted then-subsection (e) of the forfeiture statute which read: "`[T]he burden of producing evidence shall be upon the person claiming [to be the owner of the conveyance].'" In determining the meaning of the statute we noted:
Where the legislative intent does not clearly appear on the face of the statutory language, as is the case here, in order to *174 determine intent the court may resort to various tools of statutory construction.
Id. at 347, 804 P.2d 24.
¶ 40 The word "knowledge" is not defined in the statute. The lack of a definition in the statute leads the majority not to conclude that the phrase is ambiguous or in need of judicial construction, but rather that the word is susceptible to one and only one possible meaning: subjective, actual knowledge. Majority at 170. The majority finds that the definition of "knowledge" as "subjective knowledge" is simply, "common sense." Id. at 170 (it is "only common sense that when one says someone knows of something ... actual knowledge is contemplated"). This approach contrasts with our decision in 31641 West Rutherford Street, 120 Wash.2d at 88, 838 P.2d 111, where we noted that consent "is not defined in the statute" and turned to cases construing the federal forfeiture provision for guidance as to the meaning of "consent." Moreover, the majority's strong assertion is belied by the fact that the federal circuit courts of appeal have debated the meaning of the word "knowledge" in the identical federal forfeiture provision for years. United States v. 1813 15th St., N.W., 956 F.Supp. 1029, 1035 (1997) ("Whether the claimant must prove absence of actual knowledge of the illegal activity or the more demanding burden of absence of constructive knowledge of the illegal activity is a split issue amongst the circuits.") (citing cases). Further, in the context of criminal statutes, this court has had its own struggles with the meaning of the word "knowledge." See State v. Shipp, 93 Wash.2d 510, 514, 610 P.2d 1322 (1980) (redefining the application of statutory "knowledge" definition because "ambiguity in the interpretation of a knowledge instruction given in the words of the statute would seriously infringe on the rights of a defendant").
¶ 41 Unless the federal courts of appeal and this court all lack common sense, our analysis must go deeper than "common sense" to ascertain the meaning of the word "knowledge" in RCW 69.50.505. See One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 148 Wash.2d 319, 330, 61 P.3d 1094 (2002) ("Furthermore, a court should not apply a mechanical definition but rather should interpret the meaning of terms in the context of the statute as a whole and consistently with the intent of the legislature.") (citing City of Tacoma v. Taxpayers of Tacoma, 108 Wash.2d 679, 693, 743 P.2d 793 (1987)).
¶ 42 Although the majority correctly notes that the legislature "is familiar with objective versus subjective `knowledge'" it incorrectly concludes that because the legislature "could have defined knowledge with an objective definition" they clearly meant "knowledge" to encompass only subjective knowledge. Majority at 170 (citing other statutes in which the legislature has "utilized terms to require objective versus subjective knowledge"). My research reveals that the legislature has also utilized terms to require subjective knowledge, with the phrase "actual knowledge." RCW 7.60.190; RCW 9.45.260; RCW 11.02.110; RCW 11.106.100; RCW 19.174.030; RCW 19.270.020; RCW 46.32.110; RCW 69.43.060; RCW 73.20.060. The legislature's use of clearly subjective or clearly objective standards of knowledge by specific phrasing in other statutes only affirms the ambiguity of the nonspecific term as it is used in RCW 69.50.505.
¶ 43 While courts searching for the meaning of words in a statute may turn to the dictionary to ascertain that meaning, in this case the dictionary reveals more than one possible meaning for the word "knowledge." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1252-53 (2002) (listing two main definitions of the word "knowledge" and a total of six subdefinitions. Examples of these definitions include: "to recognize as being something indicated;" "to recognize, admit, or confess the fact or truth of;" "the fact or condition of knowing."). While the difference between those definitions may not be significant in the course of everyday conversation, that difference becomes significant when "knowledge" is used as a substantive legal standard. See Gellman v. United States, 235 F.2d 87, 93 (8th Cir.1956) (discussing the definition of the word "retail" the Gellman court noted: "Where words are susceptible of several meanings, the court is at liberty to determine ... the sense in *175 which the words were used in a statute." (emphasis added)).
¶ 44 This court has recognized that "knowledge" is a "technical term." See State v. Scott, 110 Wash.2d 682, 688-90, 757 P.2d 492 (1988) (analyzing "knowledge" under the technical term rule). Our recognition of the nuance inherent in the word "knowledge" is supported by its historical use as a substantive legal standard. When legislators use the term "knowledge" in a statute it is often to describe the legal burden a party must meet to establish a given fact, defense, or element of a crime. As such a term, knowledge is susceptible to many meanings. See generally United States v. Cook, 497 F.2d 753, 764 (9th Cir.1972) (Ely, J., dissenting) ("The majority recognizes that the term `any knowledge' is vague, and the trial court's attempted definition of the phrase indicates the variety of meanings to which the expression may be subjected.").
¶ 45 Admittedly, the legislature left us without much guidance as to its intention for the meaning of the term "knowledge." The legislative history reveals that the phrase "knowledge or consent" has not been altered once since the legislature adopted the uniform controlled substance act in 1971. Compare former RCW 69.50.505(a)(4)(ii) (1971) ("knowledge or consent") with RCW 69.50.505(1)(d)(ii) ("knowledge or consent").
¶ 46 As noted above, the legislature has used more definitive phrases to indicate either actual knowledge or objective knowledge throughout the Washington State code. No real guidance can be had from the presence of those more definitive phrases elsewhere in the code.
¶ 47 Black's Law Dictionary lists both actual and constructive knowledge under its definition of "knowledge." BLACK'S LAW DICTIONARY 888 (8th ed.2004) (listing 10 separate definitions of "knowledge" and defining, e.g., "actual knowledge" as "[d]irect and clear knowledge, as distinguished from constructive knowledge" and "constructive knowledge" as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person").
¶ 48 Additionally, our ability to rely on federal analysis is limited as the circuit courts remain split on whether the word requires subjective or objective knowledge. 1813 15th St., N.W., 956 F.Supp. at 1035 ("Whether the claimant must prove absence of actual knowledge of the illegal activity or the more demanding burden of absence of constructive knowledge of the illegal activity is a split issue amongst the circuits.") (citing cases). This split remains, in part, because the federal innocent owner provision was deleted from the uniform controlled substance act in April 2000 and replaced with a "uniform innocent owner defense applicable to all federal civil forfeiture cases except those under Title 19 and a few other statutes." 1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 4.02[6][c][i], at 4-31 (2009).
¶ 49 While the exact meaning of "knowledge" in RCW 69.50.505 remains unclear, what is clear is that our legislature did not write the innocent owner exception to allow everyone save the person who committed the crime giving rise to forfeiture to qualify as an innocent owner. Statutes that exempt everyone save the perpetrator are criminal forfeiture statutes. Our legislature purposely adopted a civil forfeiture statute in order to "remove the profit incentive from drug trafficking." 31641 W. Rutherford St., 120 Wash.2d at 88, 838 P.2d 111 (citing United States v. 141st St. Corp. by Hersh, 911 F.2d 870, 879 (2d Cir.1990)); 1 Steven L. Kessler, Civil and Criminal Forfeiture: Federal and State Practice § 10:45, at 10-396 (2001) ("Washington's civil drug forfeiture statute is codified in the state's Food, Drugs & Cosmetics Law." (footnote omitted)). Additionally, as part of the Uniform Controlled Substances Act, chapter 69.50 RCW, the forfeiture provision was designed to aid states in "confiscating the vehicles and instrumentalities used by drug traffickers" in order to "prevent their use in the commission of subsequent offenses." Unif. Controlled Substances Act § 505 cmt. (amended 1973), 9 U.L.A. 899 (2007). These purposes, combined with the civil nature of the act, make it clear that the legislature did not envision allowing all to qualify as innocent *176 owners so long as they did not commit the crime.
¶ 50 The majority appears to agree with this court's holding in 31641 West Rutherford Street that "objective facts [can] be used to determine subjective knowledge." Majority at 11; 31641 W. Rutherford St., 120 Wash.2d at 91, 838 P.2d 111. In the context of the forfeiture statute, I see no difference between concluding from objective facts that a claimant had subjective knowledge in the face of his denial and saying that he "should have known."[3] The facts of this case make this clear: the Rooses claim they "had no knowledge of what [Thomas] was using the car for or contents in the car at that time." I CP at 52 (emphasis added). Yet, the record demonstrates that as of August 16, 2005, Alan Roos knew that Thomas had been arrested in the family Nissan with a "brick" of cocaine. The majority's holding allows the Rooses to disclaim all knowledge of Thomas' drug activity even after this occurred.
¶ 51 The majority seems to accept the Rooses' assertion that because at the time Thomas was driving around in the Chevelle with numerous controlled substances they had no idea what he was up to, they can qualify as innocent owners. But how is the State to ever rebut the claimant's assertion that he did not know of the illegal activity as it was occurring? The only thing that comes to my mind is for the State to show that the claimant was actually involved in the activity giving rise to the forfeiture. Indeed, this is what the majority appears to suggest the standard of knowledge should be: "Such instances require proof of someone actually doing something to support or facilitate the commission of a crime or actually knowing and assisting in the criminal activity in order to be subject to criminal sanctions." Majority at 170-71. This is not the standard established by the legislature.
¶ 52 The majority's holding significantly alters the statute by allowing any one who did not participate in the crime to automatically qualify as an innocent owner simply by stating she had no knowledge of the activity giving rise to the forfeiture at the time it was occurring. This effectively turns the legislature's adoption of a civil statute into a criminal statute.
¶ 53 To determine the appropriate standard to be applied in this case, I suggest we take a page from the United States Supreme Court's book on the analogous federal innocent owner exemption:
[W]hether or not the text of the statute is sufficiently ambiguous to justify resort to the legislative history, equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property.
United States v. 92 Buena Vista Ave., 507 U.S. 111, 129-30, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). In fact most courts, whether applying the constructive or the subjective standard of knowledge refuse to allow "willfully blind" claimants to benefit from the innocent owner exception. 141st St. Corp., 911 F.2d at 877 ("there was substantial evidence from which the jury could have concluded that [claimant] was aware of the drug trafficking"); 1813 15th St., N.W., 956 F.Supp. at 1036 ("Faced with overwhelming evidence to the contrary, a claimant cannot rely upon mere denials to prove an absence of actual knowledge, but rather must come forward with something more substantial."); United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895, 906 (11th Cir.1985) ("the district court properly applied the `actual knowledge' standard, and found sufficient evidence to support an inference that [claimant] had actual knowledge of the drug taint"); United States v. 8848 S. Commercial St., 757 F.Supp. 871, 883 (1990) ("when there is objective evidence in the record sufficient to support an inference of the claimant's actual knowledge, the claimant must do more than simply deny knowledge in order to meet his or her burden of proof").
¶ 54 Even in 31641 W. Rutherford Street, 120 Wash.2d at 91, 838 P.2d 111, we noted *177 that "facts and the reasonable inferences therefrom viewed in the light most favorable to the plaintiffs would raise genuine issues of fact regarding [claimant's] knowledge of ... the illegal conduct."
¶ 55 The hearing officer made reasonable inferences from the facts established at the hearing to hold, essentially, that the Rooses had "guilty knowledge" and could not avoid this knowledge simply by "[sticking their heads] in the sand." Pet. for Review, App. 2, at 12. The hearing officer's holding is similar to that in 8848 South Commercial Street, 757 F.Supp. at 883: "when there is objective evidence in the record sufficient to support an inference of the claimant's actual knowledge, the claimant must do more than simply deny knowledge in order to meet his or her burden of proof."
¶ 56 The statute placed the burden on the Rooses to disprove they knew of Thomas' drug activity in the family cars. They cannot meet this burden simply by claiming they did not know of the events taking place at the time the car was seized. I would uphold the hearing officer's forfeiture of the Chevelle on the basis of his inference that Alan and Stephne knew of their son's drug activity in the car. The evidence from August 15, 2005, on, supports this inference. Prior to that date, the evidence as to the Rooses' knowledge is insufficient to support a finding of knowledge under the statute. I agree that the Rooses met their innocent owner burden of proof as to the Nissan.
WE CONCUR: OWENS, FAIRHURST, and J.M. JOHNSON, JJ.
NOTES
[1] As will be shown by our analysis of Tellevik, Escamilla is unhelpful in this case. Escamilla did not concern the definition of "knowledge"; rather, it concerned the sufficiency of evidence needed to show consent. Escamilla is not binding on this court and appears to have incorrectly approved of (at least tacitly) a "knew or should have known" standard with respect to "innocent owners."
[2] See also State v. Everybodytalksabout, 145 Wash.2d 456, 472, 39 P.3d 294 (2002) (noting that the State must show the defendant had knowledge of the crime and aided in the planning or commission of that crime).
[3] According to her deposition, Mrs. Pearson lived in the Pearson home from 1980 to 1986. During this time, the entire basement was built to house where the grow operation was located. The house was lifted, the basement was built, the trap door and lock were installed, and a new floor was put down to cover the floor. This work was done without Mrs. Pearson's opposition (supposedly without her knowledge of the reason for the elaborate remodel).
[1] Because I find that Stephne and Alan knew of Thomas' drug activity in the family cars at the time of his arrest in the Chevelle, more facts than the majority provides are necessary to my disposition of this case.
[2] Alan and Stephne own three properties in Washington. They reside at their Bothell residence. Thomas uses this address as his official address but rarely stayed there during the time of these events. Pet. for Review, App. 2, at 3. Alan and Stephne also own one property in Sedro Woolley, Skagit County, and one rental property in Seattle.
[3] The Court of Appeals would impose a duty on claimants to know everything that would arise from a "reasonable inquiry" into the use of their property. In re Forfeiture of Chevelle, 140 Wash. App. at 813, 167 P.3d 599. I do not think the legislature intended this extra burden to be placed on claimants.