## NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MARCH 1, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VICTORIA LOCKETT, | ) | |
| | ) | No. 38046-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS SATURNO, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Victoria Lockett and her family were qualified for a Section 8 Housing Voucher valued at $1043 per month. Douglas Saturno advertised a rental unit for $995 per month. When Ms. Lockett met Mr. Saturno to view the rental, he asked about her "source of income" and then told her that her voucher would not cover the monthly rental. Ms. Locket did not fill out a written rental application. Instead, she filed suit against Mr. Saturno for "source-of-income" discrimination under RCW 59.18.255. At summary judgment, the trial court dismissed Ms. Lockett's complaint after concluding that she did not qualify as an "otherwise eligible prospective tenant" because she did not submit a written rental application.

The term "prospective tenant" is defined as one who "has applied for" a rental unit. RCW 59.18.030(25). As a matter of first impression, we hold that the term "has applied for" should be given a broad definition that includes a person who requests to be

No. 38046-7-III
*Lockett v. Saturno*

considered for, or expresses serious interest in a rental unit. Because Ms. Lockett meets this definition, she was a prospective tenant.

Alternatively, Mr. Saturno asserts that Ms. Lockett cannot show that she was "otherwise eligible" because she failed to submit a written application and thus, her qualifications were unknown. By statute, Mr. Saturno must provide or post his eligibility criteria before obtaining any information about a prospective tenant. On remand, the trial court must determine whether Ms. Lockett is otherwise eligible based on the rental criteria posted by Mr. Saturno in compliance with RCW 59.l8.255(1).

We reverse the trial court's order on summary judgment dismissing Ms. Lockett's complaint and remand for proceedings consistent with this opinion.

BACKGROUND

We consider the following facts in a light most favorable to Victoria Lockett as the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

Ms. Lockett's household received a federal Housing Choice Voucher Program Section 8 (voucher) valued at $1043 per month, qualifying them for a two-bedroom rental unit. Her household consists of Ms. Lockett, her minor child, and her partner Oliver Neal who is disabled and receiving SSI (supplemental security income) benefits.

Ms. Lockett contacted Lori Sharp, a rental agent, who referred her to Douglas Saturno because he had a two-bedroom rental house available to lease for $995 per month plus utilities. Ms. Lockett set up an appointment with Mr. Saturno and met him at the

2

No. 38046-7-III
*Lockett v. Saturno*

rental unit. As Ms. Lockett and Mr. Saturno approached the rental unit, Mr. Saturno asked about her income and employment. Ms. Lockett told Mr. Saturno about the family voucher, Mr. Neal's SSI, and their status as full-time college students. After hearing this information, Mr. Saturno stopped and told Ms. Lockett that "the housing voucher would not cover this house." Clerk's Papers (CP) at 39. He continued stating that she was free to look at the rental unit but seemed hesitant to allow her to enter. Once inside the house, Ms. Lockett asked why the housing voucher would not cover the home and whether the home had deficiencies. Mr. Saturno clarified that the voucher would not cover the house because the rent was too high. He then asked if Ms. Lockett and Mr. Neal were married. When Ms. Lockett responded that they were not, he told her they could not apply for the house on two separate vouchers. She explained to him that there was one voucher for her three-person family. Mr. Saturno reasserted that her voucher "would not cover the house either way." CP at 40. Mr. Saturno claims that he advised them that they needed to make a formal application with a fee.

Ms. Lockett and her partner left the house and contacted Lori Sharp by text message to reassure her that they had one voucher for their family. At the same time, Mr. Saturno sent a message to Ms. Sharp indicating Ms. Lockett had two separate vouchers. The rental agent considered Ms. Lockett's financial situation "borderline." CP at 51.

Ms. Lockett sued Mr. Saturno for source-of-income discrimination under RCW 59.18.255. Mr. Saturno moved to dismiss her complaint on summary judgment, asserting

3

No. 38046-7-III
*Lockett v. Saturno*

that Ms. Lockett was not "an otherwise eligible prospective tenant" under RCW

59.18.255(1) because she failed to submit a written application for consideration. In

support of his motion, Mr. Saturno acknowledged that Ms. Sharp handled his tenant

screening and applications. If an applicant was successfully screened, they could submit

an online application. Mr. Saturno asserted that neither Ms. Lockett nor Mr. Neal were

screened or submitted an online application for the rental unit. The screening process for

his rental properties generally involves "various criteria" concerning criminal history

checks, rental history, credit history, and income requirements. Mr. Saturno's specific

"various criteria" are not provided in the record.

Ms. Locket responded that she did not submit a written rental application and fee

because she believed it would have been a waste of time and money based on Mr.

Saturno's comments. With Mr. Neal's disability income and Ms. Lockett working a part-

time job, they claimed an ability to afford utility payments on the property. Ms. Lockett

and Mr. Neal have never been evicted, withheld rent payments, or filed for bankruptcy.

Mr. Neal has criminal convictions.

At the summary judgment hearing, the trial court asked one question: whether Ms.

Lockett "agree[d] that she never did submit an application?" Report of Proceedings (RP)

at 8. Through her attorney, Ms. Lockett acknowledged that she did not submit a written

application but argued that she began the process of the application. Ms. Lockett

continued that she started the application process by contacting the rental agent and

No. 38046-7-III
*Lockett v. Saturno*

following instructions until Mr. Saturno discouraged her.  The trial court granted

summary judgment dismissing the suit.  Ms. Lockett appeals.

ANALYSIS

We review the trial court's order on summary judgment under a de novo standard.

*Keck*, 184 Wn.2d at 370.  Summary judgment is only appropriate if there are no genuine

issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id*.

The Residential Landlord Tenant Act of 1973 (RLTA), ch. 59.18 RCW, governs

the rights, responsibilities and remedies of residential landlords and tenants.  *Gerlach v.*

*Cove Apts., LLC.*, 196 Wn.2d 111, 127, 471 P.3d 181 (2020).  In 1973, the bulk of the

RLTA constituted the first comprehensive landlord-tenant law reform in nearly three

quarters of a century designed to maximize the obligations of landlords, protect tenant

rights, and balance the bargaining positions between them in residential leasing.  *Silver v.*

*Rudeen Mgmt. Co.*, 197 Wn.2d 535, 543-44, 484 P.3d 1251 (2021).  In displacing several

common law rules, the RLTA balanced power by placing affirmative duties on the

landlord and creating interdependent obligations between the landlord and tenant.  *Id*. at

544.

"The RLTA is a remedial statute that must be 'construed liberally in order to

accomplish the purpose for which it is enacted.'"  *Id*. at 548 (quoting *State v. Douty*, 92

Wn.2d 930, 936, 603 P.2d 373 (1979)).  It creates remedies for tenants to protect tenant

5

No. 38046-7-III
*Lockett v. Saturno*

interests susceptible to a landlord's upper hand especially during times of housing shortages. *Id.*

In 2018, the legislature amended the RLTA to include a new statute, RCW 59.18.255, prohibiting source-of-income discrimination by landlords. LAWS OF 2018, ch. 66, § 1. The intent of the statute was "to ensur[e] housing options." *Id.* Under this new statute, "otherwise eligible prospective tenant[s]" are protected from eight types of source-of-income discrimination. RCW 59.18.255. As relevant to this case, the statute prohibits a landlord from attempting to discourage the rental of property to a prospective tenant, representing that a residence is not available for inspection or rental, or otherwise denying or making a rental unit unavailable based on a prospective tenant's source of income. RCW 59.18.255(1)(d), (g), (h). The statute also provides a civil cause of action for violations. RCW 59.18.255(4).

A. PROSPECTIVE TENANT

The protections afforded by RCW 59.18.255(1) are only available to "otherwise eligible prospective tenant[s]." Mr. Saturno argues Ms. Lockett does not qualify as a "prospective tenant" because she did not submit a written rental application. The term "prospective tenant" is specifically defined as "a tenant or a person who *has applied for* residential housing that is governed under this chapter." RCW 59.18.030(25) (emphasis added). Mr. Saturno contends that the ordinary meaning of this language necessarily requires a person to submit a written rental application to qualify as a prospective tenant.

6

No. 38046-7-III
*Lockett v. Saturno*

He continues that since Ms. Lockett never submitted a written application, she cannot qualify as a prospective tenant and is not protected by the statute. Ms. Lockett on the other hand, argues that the term "has applied for" should be construed liberally to avoid an absurd result and promote the purpose of the statute.

The resolution of this issue requires us to interpret the statute. Our "fundamental objective in interpreting statutes 'is to ascertain and carry out the Legislature's intent.'" *Silver*, 197 Wn.2d at 542 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology*, 146 Wn.2d at 9-10. In order to determine the plain meaning, we consider the statute in context to related statutes and "other provisions of the same act in which the provision is found." *Id*. at 10 (citing *In re Estate of Lyons v. Sorenson*, 83 Wn.2d 105, 108, 515 P.2d 1293 (1973)).

The term "has applied for" is not defined within the chapter. Our first step in discerning its meaning is to look at the ordinary definition of the term. If a statute's meaning is plain on its face, then the court gives effect to that plain meaning. *Id*. at 9-10. "Plain meaning may be gleaned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012) (quoting *Dep't of Ecology*, 146 Wn.2d at 11). A dictionary may be used to determine the ordinary meaning of an

7

No. 38046-7-III
*Lockett v. Saturno*

undefined term. *Seattle Hous. Auth. v. City of Seattle*, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018). "In giving meaning to an undefined term, we 'consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions.'" *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 437, 359 P.3d 753 (2015) (quoting *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001)).

The dictionary definition of the verb "has applied" does not conclusively resolve the issue in this case. The dictionary defines "apply" in its intransitive verb form as "to make an appeal or a request especially formally and often in writing and usually for something of benefit to oneself." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (1993). While the dictionary definition suggests a preference for a written application, neither the statute itself nor the ordinary definition of "apply" require an application to be in writing. Still, we must decide when a person has applied for or made a request for residential housing sufficient to recognize them as a prospective tenant.

In considering the plain meaning, we also look to context, not only of the statute but the chapter as a whole. The term "prospective tenant" is also used in RCW 59.18.257(1)(a). This statute provides that "[p]rior to obtaining any information about a prospective tenant, the prospective landlord shall first notify the prospective tenant in writing, or by posting," the types of information that will be accessed for tenant screening, and the criteria that may result in a denial of the application. If a "prospective

8

No. 38046-7-III
*Lockett v. Saturno*

tenant" is defined as one who "has applied," and this term is read to require a written rental application, then RCW 59.18.257 becomes circular. We should avoid an interpretation that produces an absurd result. *Wright v. Jeckle*, 158 Wn.2d 375, 379-80, 144 P.3d 301 (2006). The only way to avoid an absurd interpretation of RCW 59.18.257 is to construe the term "has applied" as someone who has not yet provided any information about renting a residence.

Applying a broad definition of the term "has applied" not only promotes the remedial purpose of the RLTA, but also avoids the circular issue created by a narrow definition of the term. With these interests in mind, we hold that a person "has applied for" a rental unit when they make a request to be considered for a rental unit or express serious interest in a rental unit. The request does not have to be in writing, and it can be made before providing any information about their qualifications as a prospective tenant.

If the term were given a narrow meaning that required a written application in order to become a "prospective tenant," then a landlord could simply circumvent the statutory proscriptions by refusing to provide an application, or discouraging the prospective tenant from submitting an application and paying an application fee. Such a narrow reading of the term is not required by the plain language, nor does it promote the legislative purpose of the chapter.

Under this definition Ms. Lockett was a prospective tenant. She met with Mr. Saturno to view the rental unit and inquired about the rental terms and eligibility

9

No. 38046-7-III
*Lockett v. Saturno*

requirements. This was sufficient to find that she expressed serious interest in the rental

unit and requested to be considered for the rental unit. In this case, the trial court granted

Mr. Saturno's motion to dismiss after concluding that Ms. Lockett was not a "prospective

tenant" because she had not provided a written application for the available residence.

Having determined that a written application is not necessary in order to become a

prospective tenant, we conclude that the trial court erred in finding that Ms. Lockett did

not qualify as a prospective tenant because she did not submit a written application.

B. OTHERWISE ELIGIBLE

In the alternative, Mr. Saturno argues that even if Ms. Lockett is a prospective

tenant, she cannot show that she is "otherwise eligible" because he requires a written

application to be eligible and Ms. Lockett never submitted one. The remedies under

RCW 59.18.255 are only available to "otherwise eligible prospective tenant[s]." Whether

Ms. Lockett was otherwise eligible is a question of fact.

Mr. Saturno's argument puts the cart before the horse. He is correct that we

cannot determine if Ms. Lockett was "otherwise eligible." But this is because the record

does not disclose Mr. Saturno's specific rental criteria. Under RCW 59.18.257, Mr.

Saturno is required to post or provide in writing his rental criteria before obtaining any

information from a prospective tenant. On remand, the trial court can determine if Ms.

Lockett was otherwise eligible by comparing her circumstances in February 2020, when

she met with Ms. Lockett, to the eligibility criteria that Mr. Saturno posted or provided

10

No. 38046-7-III
*Lockett v. Saturno*

pursuant to RCW 59.18.257. Since Ms. Lockett's eligibility requirements are not before the court, and since the trial court did not decide this question of fact, we cannot decide the matter on appeal.

C.   ATTORNEY FEES

Ms. Lockett requests attorney fees on appeal. Under RCW 59.18.255(4), Ms. Lockett will be entitled to attorney fees if she is successful in proving that Mr. Saturno violated the statute. While we are reversing the court's order dismissing her complaint and remanding for further proceedings, we do not answer the ultimate question. If Mr. Saturno is found to have violated the statute, Ms. Lockett's statutory attorney fees may include the fees she incurred in pursuing this appeal.

We reverse the order on summary judgment dismissing Ms. Lockett's complaint and remand for proceedings consistent with this opinion.

_____
Staab, J.

WE CONCUR:

_____    _____
Siddoway, J.                       Pennell, C.J.

11