IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEFFREY THURMAN, | ) | No. 38991-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| COWLES COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — The Uniform Public Expression Protection Act

(UPEPA or the Act), chapter 4.105 RCW, provides an expedited process for parties

seeking dismissal of causes of action thought to target activity protected by the First

Amendment to the United States Constitution. The process envisions a defendant, not

later than 60 days after being served with a pleading asserting a covered cause of action,

filing a special motion for expedited relief.

This opinion addresses (1) whether the UPEPA applies to causes of action pending

on the Act's effective date, (2) whether service of an amended complaint restarts the 60-

day period for filing the special motion, (3) inconsistency between rules adopted by our

Supreme Court and some procedural rules in the UPEPA, and (4) constitutional as-

applied challenges to the UPEPA. We conclude (1) the UPEPA applies to causes of action asserted on or after the Act's effective date, (2) service of an amended pleading restarts the 60-day period with respect to new claims, (3) to the extent the UPEPA's rules of court procedure are inconsistent with those adopted by our Supreme Court, the latter must be given precedent, and (4) the constitutional as-applied challenges fail. We affirm in part and reverse in part.

## FACTS

On June 13, 2019, Cowles Publishing Company, d/b/a, the *Spokesman-Review*, published an article about Jeffrey Thurman. The article's headline read: "Spokane County sheriff's sergeant fired for racial slur, sexual harassment, talk of killing black people." Clerk's Papers (CP) at 514. Under a picture of Mr. Thurman and his police dog, the caption read in part: "[Jeff Thurman] was fired on June 13, 2019, after an internal investigation found he allegedly spoke of killing black people and sexually harassed a female deputy on his helicopter crew. He denies the allegations and is suing Sheriff Ozzie Knezovich for defamation." CP at 514. The body of the article included details of the alleged wrongdoing, as well as how the sheriff's department investigated the alleged wrongdoing. In large part, the information reported came from an interview with the sheriff and the sheriff's press conference.

On June 14, 2021, Mr. Thurman filed a complaint against Cowles Company, the

parent company of Cowles Publishing Company, alleging defamation and invasion of

privacy by false light.  In the complaint, Thurman alleged that Cowles and the sheriff had

> engaged in an agreement . . . whereby Cowles would not investigate the
> facts underlying the Sheriff's upcoming defamatory announcement, and it
> would be given an "exclusive" on publication in exchange.

CP at 6.  Thurman further alleged that the June 13, 2019 article, as well as articles

published on June 18, 2019, July 2, 2019, June 21, 2020, and August 5, 2020, contained

defamatory statements.

After obtaining leave of court, on December 3, 2021, Jeffrey Thurman filed an

amended complaint.[1]  The amended complaint alleged additional factual allegations to the

defamation cause of action, did not allege the invasion of privacy cause of action, and

alleged a Consumer Protection Act (CPA), chapter 19.86 RCW, cause of action.

On December 29, 2021, Cowles sent Mr. Thurman a letter notifying him of its

intent to seek dismissal of the lawsuit.  On January 21, 2022, Cowles filed a special

---

[1] The court's November 19, 2021 order granting motion to amend required Mr. Thurman to serve the amended complaint on Cowles.  There is no declaration of service in the record attesting that this was done.  For purposes of this appeal, we presume that Mr. Thurman complied with the court's order and effected service on or about December 3, 2021, the date Mr. Thurman filed his amended complaint.

No. 38991-0-III
*Thurman v. Cowles*

motion for expedited relief, seeking to dismiss both the defamation and the CPA causes

of action.

The trial court partially granted Cowles' motion. It concluded the UPEPA did not

apply to Mr. Thurman's defamation cause of action because it was asserted before the

effective date of the new law. The court did apply the UPEPA to the CPA cause of action

and dismissed it as violative of Cowles' First Amendment rights. The court declined

Cowles' request for reasonable attorney fees, reasoning that each party had partially

prevailed in their motions.

Cowles timely appealed the partial denial of its motion for expedited relief.[2] Mr.

Thurman cross appealed.

ANALYSIS

OVERVIEW OF THE EXPEDITED DISMISSAL PROCESS

The legislature passed the UPEPA to safeguard traditional First Amendment rights

guaranteed to the public and the press. *See* RCW 4.105.901. The Act creates a special

procedure to quickly resolve cases that target the "[e]xercise of the right of freedom of

speech or of the press, the right to assemble or petition, or the right of association,

_____

[2] RCW 4.105.080 grants a moving party who is denied expedited relief, in whole
or in part, the right of direct appeal.

4

guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern." RCW 4.105.010(2)(c). It does this by allowing parties to bring a special motion for expedited relief "[n]ot later than sixty days after a party is served with a complaint, cross-claim, counterclaim, third-party claim, or other pleading that asserts a cause of action to which this chapter applies . . . to dismiss the cause of action or part of the cause of action." RCW 4.105.020(2).

Upon the filing of the motion, all other proceedings—including pending discovery and other motions—are stayed. RCW 4.105.030(1)(a). The record for the special motion is limited to "the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under superior court civil rule 56." RCW 4.105.050.

The court must dismiss the cause of action or part of the cause of action if three conditions are met: (1) the moving party establishes under RCW 4.105.010(2) that the chapter applies, (2) the responding party fails to establish under RCW 4.105.010(3) that the chapter does not apply, and (3) the responding party fails to establish a prima facie case, or the moving party establishes dismissal is warranted under the standards of CR 12(b)(6) or CR 56. RCW 4.105.060(1)(a)-(c).

A.    THE DEFAMATION AND CPA CLAIMS

1.    *The UPEPA applies to Mr. Thurman's defamation claims*

The parties disagree whether the UPEPA applies to Mr. Thurman's original defamation and amended defamation claims. The answer to this question largely depends upon our interpretation of RCW 4.105.903.

We review questions of statutory interpretation de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). "On matters of statutory interpretation, our 'fundamental objective is to ascertain and carry out the Legislature's intent.'" *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, 186 Wn.2d 921, 930, 383 P.3d 512 (2016) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "When possible, the court derives legislative intent from the plain language enacted by the legislature, considering the text of the provision in question," including the statute's context, related provisions, amendments, and the statutory scheme. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 403, 377 P.3d 199 (2016). "Appellate courts do not supply omitted language even when the legislature's omission is clearly inadvertent, unless the omission renders the statute irrational." *State v. Soto*, 177 Wn. App. 706, 716, 309 P.3d 596 (2013).

RCW 4.105.903 provides: "This chapter applies to a civil action filed or cause of action asserted in a civil action on or after July 25, 2021." Absent clear legislative intent to the contrary, the word "or" in a statute is disjunctive. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). Construing "or" disjunctively, RCW 4.105.903 makes the chapter applicable to (1) a "civil action filed . . . on or after July 25, 2021," or (2) a "cause of action asserted in a civil action on or after July 25, 2021."

With respect to the first disjunctive phrase, Mr. Thurman's civil action was not filed on or after July 25, 2021. But with respect to the second disjunctive phrase, Mr. Thurman's original and amended defamation causes of action were asserted on or after July 25, 2021. More plainly, although originally filed before July 25, the original causes of action continued to be asserted until amended, so they were asserted on or after July 25, 2021. For this reason, the UPEPA applies to Mr. Thurman's original and amended defamation claims.

Our dissenting colleague reads the second clause to say a "cause of action asserted in a civil action *filed* on or after July 25, 2021." We disagree that we can add the word "filed" to the second clause. Rather, we must apply the statute as written—"we cannot rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6

7

Wn. App. 2d 88, 91, 429 P.3d 1113 (2018). If the plain language is unambiguous, we apply that meaning. *Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 364, 474 P.3d 547 (2020).

A literal reading is consistent with our legislature's directive on how courts must construe the UPEPA. RCW 4.105.901 requires the chapter to be "broadly construed and applied [so as] to protect the exercise of" the free speech, press, assembly, and association protections guaranteed by our federal and state constitutions. A literal reading of RCW 4.105.903 results in greater protections for people sued for exercising these important constitutional rights. We conclude that the UPEPA applies to all of Mr. Thurman's defamation claims.

Mr. Thurman argues defamation causes of action are not covered by RCW 4.105.901. We disagree. RCW 4.105.010(3)(b)(i) encompasses causes of action asserted against businesses, including the print media, "related to the gathering, receiving, posting, or processing of information for communication to the public." Here, Mr. Thurman's defamation cause of action arises out of the *Spokesman-Review's* news story, which was information posted for communication to the public.

Mr. Thurman next argues that defamation is not the kind of public expression intended to be protected. We agree. Under the UPEPA, provable defamation claims

survive the expedited dismissal process and are not dismissed unless and until a trier of fact finds that defamation has not been proved. However, claims against protected expression are covered by the UPEPA notwithstanding a plaintiff characterizing that expression as defamation.

> 2.     *Cowles timely filed its special motion with respect to both causes of action in the amended complaint*

As noted above, RCW 4.105.020(2) allows a party, not later than 60 days after service of "a complaint, cross-claim, counterclaim, third-party claim, *or other pleading that asserts a cause of action to which this chapter applies,*" to file a special motion for expedited relief.[3] "Other pleading" must mean an amended pleading because the list of pleadings preceding "other pleading" covers every type of original pleading. Here, Cowles filed its special motion for expedited relief not more than 60 days after being served with the amended complaint. Its motion therefore was timely.

Mr. Thurman argues that "retriggering" Cowles' right to file a special motion produces absurd results. We disagree. As mentioned previously, the legislature has

---

[3] Our dissenting colleague's other criticism is, to be consistent, we would have to conclude that "the 60-day trigger for filing an expedited motion starts when a responding party is served with a pleading that asserts a cause of action, and then restarts every day that the cause of action is pending." Dissent at 5. We disagree. The 60-day period is triggered upon service of the pleading, which occurs only once.

directed courts to construe the UPEPA broadly to protect certain federal and state constitutional rights. By renewing a party's opportunity to file a special motion, these rights are better protected.

Mr. Thurman further argues the UPEPA should not be construed in a manner that precludes his vested CPA claim. We are not construing the Act in this manner. The UPEPA does not preclude bringing a CPA cause of action. Rather, it provides an expedited process for dismissing that and other causes of action if three conditions are met, including that the cause of action is subject to dismissal under the standards of CR 12(b)(6) or CR 56. RCW 4.105.060.

> 3. *The trial court property dismissed Mr. Thurman's CPA claim*

Mr. Thurman argues the trial court erred by concluding his CPA claim was barred by the First Amendment. We disagree.

The First Amendment often bars a CPA claim when such a claim is brought against someone for exercising First Amendment activity. *See State v. TVI, Inc.*, 18 Wn. App. 2d 805, 493 P.3d 763 (2021), *aff'd on other grounds*, 1 Wn.3d 118, 524 P.3d 622 (2023); *Wash. League for Increased Transparency & Ethics v. Fox News*, No. 81512-1-I, (Wash. Ct. App. Aug. 30, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/815121.pdf. This is due to tension between the First Amendment requirement that a

plaintiff prove actual malice to prevail on public concern defamation claims and the lack of any mens rea requirement for a Washington CPA claim.

Here, Mr. Thurman's CPA claim rests on the *Spokesman-Review's* public reporting of Mr. Thurman's termination from the Spokane County Sheriff's Department. The reporting was of public concern. Mr. Thurman's assertion that the reporting was untrue and deceptive fails to satisfy the heightened mens rea standard that protects this type of First Amendment activity. The trial court did not err in dismissing this cause of action under a CR 12(b)(6) standard.

B.    CONSTITUTIONAL AS-APPLIED CHALLENGES TO THE UPEPA

We review constitutional as-applied challenges de novo. *See City of Seattle v. Evans*, 184 Wn.2d 856, 861, 366 P.3d 906 (2015). "An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." *City of Redmond v. Moore*, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). Holding a statute unconstitutional as applied prohibits future application of the statute in a similar context, but the statute is not wholly invalidated. *Id.* at 669. We address Mr. Thurman's various challenges separately below.

No. 38991-0-III
*Thurman v. Cowles*

1.    *Right of access to the courts*

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. Nat'l Lab. Rels. Bd.*, 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). While Washington courts also recognize the right, the specific provisions grounding the right are hazy in our State's jurisprudence. *See Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 781, 819 P.2d 370 (1991) ("Our cases on the right of access are somewhat perplexing.").

Whatever the right's underpinnings, however, access to the courts is not unlimited. "The right of access is necessarily accompanied by those rights accorded litigants by statute, court rule or the inherent powers of the court." *Id.* at 782. Importantly, "the right of trial by jury . . . does not encompass *frivolous* claims that are brought for an improper purpose." *Davis v. Cox*, 183 Wn.2d 269, 289, 351 P.3d 862 (2015). Thus, "it is well established that '[w]hen there is no genuine issue of material fact, . . . summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial.'" *Id.* (alterations in original) (quoting *LaMon v. Butler*, 112 Wn.2d 193, 200 n.5, 770 P.2d 1027 (1989)).

Civil litigants enjoy a right to discovery tied to the constitutional right of access to the courts. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 776, 280 P.3d 1078 (2012). Open discovery, in theory, promotes early resolution of claims:

> Effective pretrial disclosure, so that each side knows what the other side knows, has narrowed and clarified the disputed issues and made early resolution possible. As importantly, early open discovery exposed meritless and unsupported claims so they could be dismissed. It is uncontroverted that early and broad disclosure promotes the efficient and prompt resolution of meritorious claims and the efficient elimination of meritless claims.

*Id.* at 777.

Mr. Thurman argues, in the context of his lawsuit, the UPEPA's discovery stay under RCW 4.105.030 unconstitutionally interfered with his access to courts. We reject Mr. Thurman's as-applied challenge.

RCW 4.105.030(4) permits a court to allow limited discovery if a party shows discovery is necessary to prove the chapter does not apply. Here, Mr. Thurman did not attempt to convince the court that he needed additional discovery. This might be because he obtained substantial pertinent discovery in his litigation against Sheriff Knezovich.[4] Had the trial court denied Mr. Thurman discovery despite a sufficient showing of need for

---

[4] Paragraph 2.4 of Mr. Thurman's complaint states: "This complaint arises from evidence unearthed during the discovery process in the . . . defamation action of [Thurman v. Knezovich]." CP at 5.

that discovery, then we could address Mr. Thurman's as-applied challenge. But because

Mr. Thurman has not established he was precluded from obtaining needed discovery, we

reject his challenge.

> 2. *Court rules of practice and procedure supersede a procedural statute*[5]

Court rules of practice and procedure adopted by the Supreme Court supersede

conflicting laws. RCW 2.04.200.

> Where a rule of court is inconsistent with a procedural statute, the court's rulemaking power is supreme. *Petrarca v. Halligan*, 83 Wn.2d 773, 522 P.2d 827 (1974). Nonetheless, apparent conflicts between a court rule and a statutory provision should be harmonized, and both given effect if possible. *Emwright v. King County*, 96 Wn.2d 538, 543, 637 P.2d 656 (1981).

*State v. Ryan*, 103 Wn.2d 165, 178, 691 P.2d 197 (1984).

Washington's civil rules generally permit open discovery but allow for court-

imposed limitations in some instances. "[T]he discovery rules contemplate differing

interests among the parties and resolve these conflicts by balancing the rights and

interests of the parties." *Putman v. Wenatchee Valley Med. Ctr., PS*, 166 Wn.2d 974,

986, 216 P.3d 374 (2009) (Madsen, J., concurring). Thus, "CR 26 and its companion

---

[5] Mr. Thurman intertwined this nonconstitutional argument with a constitutional argument similar to the one we rejected above. In this section, we address his nonconstitutional argument.

rules, CR 27-37, grant a broad right of discovery which is subject to the relatively narrow restrictions of CR 26(c)." *Puget Sound Blood Ctr.*, 117 Wn.2d at 782.

Mr. Thurman argues the narrow discovery envisioned in the UPEPA is inconsistent with the broad discovery permitted by CR 26, and the civil rules must be given precedence. This is a valid argument.

In a clash between civil discovery rules and legislative discovery rules, the former wins. Trial courts, when asked to lift a stay under RCW 4.105.030(4), must adhere to the dictates of CR 26(c), which permits trial courts to restrict discovery when "justice [is] require[d] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In making its determination of what justice requires, the trial court should take judicial notice that the legislature, by enacting the UPEPA, has set forth the public policy of the State of Washington. Ultimately though, the scope of permissible discovery and reasonable limitations are reserved to the courts as a judicial function.

Mr. Thurman also argues that a defendant's right of immediate appeal from a denial of a special motion for expedited relief is inconsistent with CR 54(b). We agree with Mr. Thurman's conclusion, but for a separate reason.

Under RCW 4.105.080, a defendant "may appeal as a matter of right from an order denying, in whole or in part, a motion under RCW 4.105.020." Under CR 54(b), an order

not disposing of all claims generally is as an interlocutory order, and any remaining claims continue to trial. The inconsistency between the statute and the rule is made more apparent by RAP 2.2(d).

Under RAP 2.2(d), which largely mirrors CR 54(b), an order not disposing of all claims generally is not appealable except under the standards for discretionary review. In this respect, RCW 4.105.030(3) is inconsistent with RAP 2.2(d) and cannot be given effect. Stated differently, unless and until our Supreme Court adopts a rule allowing for direct appeal of orders denying motions under RCW 4.105.020, appellate courts should accept review of these matters only under discretionary review standards.

### 3. *Special privileges and immunities/equal protection*

Washington's special privileges and immunities clause states, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." WASH. CONST. art. I, § 12. Washington's privileges and immunities clause serves a similar purpose to the federal equal protection clause. *Housing Auth. of King County v. Saylors*, 87 Wn.2d 732, 738-39, 557 P.2d 321 (1976).

Mr. Thurman argues the UPEPA violates both clauses because it distinguishes between the different litigants in a defamation action. He argues the UPEPA unfairly

favors a defendant-defamer because it permits the defamer to invoke the UPEPA when confronted with a defamation claim without conferring an equivalent benefit on the plaintiff.

The test applied to an equal protection challenge depends on the nature of a court's scrutiny. Strict scrutiny is reserved for situations when "an allegedly discriminatory statutory classification affects a suspect class or a fundamental right." *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Suspect classifications include those based on race, alienage or national origin. *Id.* at 18. Mr. Thurman does not argue that the UPEPA involves a suspect classification for purposes of equal protection analysis.

Because Mr. Thurman does not assert that the UPEPA discriminates against a suspect class, the rational basis test applies, permitting a legislative classification unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives. *State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992). Under rational basis scrutiny, a three-part test determines:

> (1) whether the legislation applies alike to all members of the designated class, (2) whether there are reasonable grounds to distinguish between those within and those without the class, and (3) whether the classification has a rational relationship to the purpose of the legislation.

*Philippides v. Bernard*, 151 Wn.2d 376, 391, 88 P.3d 939 (2004).

A "class," for purposes of the first part of the test, is defined as "those asserting or defending against the same cause of action . . . in the civil law arena." *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 274, 658 S.E.2d 603 (2008). In this respect, the UPEPA treats the class of defamation plaintiffs the same and the class of defamation defendants the same.

Second, the legislature has reasonable grounds for treating defamation plaintiffs and defendants differently when the former brings a cause of action against the latter for exercising First Amendment activities on a matter of public concern. This concern is well stated in the following passage, which explains the purpose of the UPEPA:

> In the late 1980s, commentators began observing that the civil litigation system was increasingly being used in an illegitimate way: not to seek redress or relief for harm or to vindicate one's legal rights, but rather to silence or intimidate citizens by subjecting them to costly and lengthy litigation. These kinds of abusive lawsuits are particularly troublesome when defendants find themselves targeted for exercising their constitutional rights to publish and speak freely, petition the government, and associate with others. Commentators dubbed these kinds of civil actions "Strategic Lawsuits Against Public Participation," or SLAPPs.
>     SLAPPs defy simple definition. They can be brought by and against individuals, corporate entities, or government officials across all points of the political or social spectrum. They can address a wide variety of issues—from zoning, to the environment, to politics, to education. They are often cloaked as otherwise standard claims of defamation, civil conspiracy, tortious interference, nuisance, and invasion of privacy, just to name a few. But for all the ways in which SLAPPs may clothe themselves, their unifying features make them a dangerous force: Their purpose is to ensnare their

18

targets in costly litigation that chills society from engaging in constitutionally protected activity.

UNIF. PUB. EXPRESSION PROT. ACT prefatory note intro., 13 pt. 2 U.L.A. 30, 31-32 (2022).

Third, the classification has a rational relationship to the purpose of the legislation. The purpose of the legislation can be achieved only by distinguishing between a plaintiff who brings a defamation cause of action against an entity exercising its First Amendment activities and a defendant sued for exercising such activities.

C. COSTS, ATTORNEY FEES, AND EXPENSES AT TRIAL AND ON APPEAL

RCW 4.105.090 makes recovery of costs, reasonable attorney fees, and reasonable litigation expenses mandatory for a party prevailing on a special motion for expedited relief. Cowles has prevailed on dismissing Mr. Thurman's CPA cause of action. But Cowles has not, at this point, prevailed in dismissing Mr. Thurman's defamation cause of action. We remand to the superior court for consideration of Cowles' special motion with respect to the defamation cause of action.

We direct the trial court to award Cowles its costs, reasonable attorney fees, and reasonable litigation expenses at trial and on appeal for prevailing against Mr. Thurman's CPA cause of action. We also direct the trial court to award Cowles similar relief if it prevails in its special motion against Mr. Thurman's defamation cause of action.

No. 38991-0-III
*Thurman v. Cowles*

Affirmed in part, reversed in part.

_____
Lawrence-Berrey, A.C.J.

I CONCUR:

_____
Pennell, J.

20

No. 38991-0-III

STAAB, J. (dissenting) — I respectfully dissent with part of the majority's conclusion. While I agree that the Uniform Public Expression Protection Act (UPEPA or Act), ch. 4.105 RCW, applies to Thurman's Consumer Protection Act (CPA), ch. 19.86 RCW, claims that were asserted after the effective date of UPEPA, I disagree with the majority that UPEPA applies to Thurman's defamation claim that was asserted before the Act's effective date.

As the majority opinion notes, our primary goal in a statutory interpretation case is to determine the legislative intent. *Travelers Cas. & Sur. v. Wash. Tr. Bank*, 186 Wn.2d 921, 930, 383 P.3d 512 (2016). To determine legislative intent, we first consider the plain meaning of the words used within the statute. *Seattle Hous. Auth. v. City of Seattle*, 3 Wn. App. 2d 532, 538, 416 P.3d 1280 (2018). "When determining a statute's plain meaning we consider 'the ordinary meaning of words, the basic rules of grammar, and the statutory context to conclude what the legislature has provided for in the statute and related statutes.'" *Id.* (quoting *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166

Wn.2d 834, 839, 215 P.3d 166 (2009)).  Under this rule for statutory construction, we apply dictionary definitions to undefined terms.  *Id.*

For purposes of this appeal, UPEPA uses the verb "assert" in two places.  Once to determine the application of UPEPA pursuant to the chapter's effective date.  And again to indicate the triggering event that allows a responding party to file a motion for expedited dismissal.

Turning first to the application of UPEPA's effective date, RCW 4.105.903 provides that UPEPA applies to either "a civil action filed or cause of action asserted in a civil action on or after July 25, 2021."  As the moving party, Cowles has the burden to show that UPEPA applies to the claims raised by Thurman.  RCW 4.105.060(1)(a).  Thurman's civil action was filed before the effective date, so under the first alternative, UPEPA would not apply.

Alternatively, UPEPA applies when a "cause of action is *asserted* in a civil action on or after" the effective date.  RCW 4.105.903 (emphasis added).  The verb "assert" is otherwise undefined but generally means "to state or affirm positively, assuredly, plainly, or strongly."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 131 (1993).  UPEPA acknowledges that the only way to assert a cause of action is through pleadings.  RCW 4.105.020(2).  A "pleading" is defined in CR 7(a) as "a complaint and an answer," along with "a reply to a counterclaim" or "an answer to a cross claim, . . . a third party complaint . . . and a third party answer."  Thus, under the second alternative, UPEPA

2

applies to a cause of action asserted after the effective date in a pleading other than one that causes a civil action to be filed, such as a counterclaim or cross claim. The alternative prong does not apply here because Thurman asserted his cause of action for defamation when he stated the claim in his original complaint. This was a singular event.

Contrary to the majority's characterization of my position, this plain language interpretation does implicitly insert language into the statute. Instead, this interpretation acknowledges the difference between a "civil action filed" and a "cause of action asserted." RCW 4.105.903. A "civil action" is a broad term referring to all lawsuits. *See* CR 2; *Thorgaard Plumbing & Heating Co. v. King County*, 71 Wn.2d 126, 130, 426 P.2d 828 (1967). A "cause of action" is synonymous with a claim. *See* BLACK'S LAW DICTIONARY at 275 (11th ed. 2019). In this case, Thurman filed his civil action when he filed his complaint, which included several causes of action including defamation. Thurman's amended complaint did not start a civil action because the action was already pending. However, the amended complaint asserted new causes of action including a claim for violating the CPA. Since the new causes of action in the amended complaint were asserted after the effective date of UPEPA, the Act applies to the newly asserted causes of action.

Despite this plain meaning, the majority opinion reasons that once Thurman asserted his claim in his complaint, he apparently continued to reassert it every day thereafter because the lawsuit remained pending. Although claiming that this reasoning

3

is supported by a literal reading of the statute, the majority opinion does not cite any authority or rely on the ordinary definition of words used in the statute. Notably, the statute does not read that UPEPA applies to causes of action *pending* on or after July 25, 2021. Instead, the Act uses the more specific verb "asserted."

Cowles contends that the amended complaint, filed after July 25, 2021, reasserted the defamation cause of action, bringing it within UPEPA's protection. I disagree with this logic as well. As the trial court noted, there is a general rule for claims reasserted in an amended pleading:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment <u>relates back to the date of the original pleading</u>.

CR 15(c) (emphasis added). Cowles fails to demonstrate why this rule does not apply and why Thurman's reasserted claim for defamation would not relate back to the same claim asserted in the original complaint.

Besides the failure to apply the ordinary meaning to the verb "assert," the majority's reasoning also creates a conflict within UPEPA. As noted above, the verb "assert" is also used in UPEPA to indicate the triggering event that starts the deadline for filing an expedited motion to dismiss. RCW 4.105.020(2). UPEPA provides that such a motion may be filed within 60 days of service of the pleading "that asserts a cause of action to which this chapter applies." *Id.*

4

Because the Act's effective date under RCW 4.105.020(2) and the triggering event under RCW 4.105.903 relate to the same subject matter, we should construe the statutes consistently. *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 626, 278 P.3d 173 (2012). Moreover, "'when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout.'" *State v. Roggenkamp*, 153 Wn.2d 614, 634, 106 P.3d 196 (2005) (Saunders, J., dissenting) (internal quotation marks omitted) (quoting *Welch v. Southland Corp.*, 134 Wn.2d 629, 636, 952 P.2d 162 (1998)).

I agree with the majority opinion that an amended complaint is considered a pleading. I also agree that Thurman's amended complaint, which asserted for the first time a cause of action for violating the CPA, triggered the 60-day time limit for filing a motion to dismiss this cause of action. But if asserting a cause of action in a pleading is interpreted consistently as an ongoing event as the majority opinion suggests, then the 60-day trigger for filing an expedited motion starts when a responding party is served with a pleading that asserts a cause of action, and then restarts every day that the cause of action is pending.

Contrary to the majority's reasoning, I would hold that asserting a cause of action in a pleading under UPEPA is a static, one-time event. Under this plain reading of the statute, UPEPA was not effective and does not apply to Thurman's defamation claim, which was asserted in his original complaint. On the other hand, Thurman's CPA claim was asserted for the first time in his amended complaint, which was filed after UPEPA's

5

effective date. Thus, Cowles had 60 days from the date of service of the amended

complaint to file a motion to dismiss the CPA claim under UPEPA.

_____
Staab, J.